Lindsey *et ux. v.* Holly *et al.*

[63 South. 222.]

1. HOMESTEAD. *Abandonment. Involuntary absence. Evidence. Instructions. Appeal and error. Code* 1906, *section* 2157.

Under Code 1906, section 2157, providing that "wherever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed" where the debtor did not voluntarily leave his homestead but was compelled to do so on account of his arrest and imprisonment in jail, so long as he was in prison and could not reside on his homestead, it cannot be said that he lost his right thereto by reason of his having abandoned it.

2. HOMESTEAD. *Abandonment. Evidence.*

Where the owner of a homestead resided on it for a short time with his wife, when he was arrested and imprisoned in jail at which time his wife left the place and went to live with her father and after the owner was released from jail, he did not return to the homestead but resided with his wife elsewhere, and after his release requested a third party to buy the place telling him that he did not intend to live there again and such third party bought the place and received a deed from the owner alone, the wife not joining in the deed, in such case there was an abandonment in law of the homestead and it was not necessary for the wife to join in the deed thereto.

3. APPEAL AND ERROR. *Review. Instructions. Verdict.*

Where a correct verdict has been rendered and the trial court would have been justified in granting a peremptory instruction for the party in whose favor the judgment was rendered, the fact that an erroneous instruction was granted such party will not cause a reversal of the case on appeal.

APPEAL from the circuit court of Attala county.

HON. G. A. McLEAN, Judge.

Suit in ejectment by W. N. Lindsey and wife against John Holly and another. From a judgment for defendants, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*A. P. Dodd* and *L. Brame,* for appellants.

The main feature of this case, as disclosed by this record is as to abandonment, and the fatal instructions granted the defendants by the trial court. If this homestead, admitted to have been acquired by these plaintiffs, had not been abandoned by them prior to the execution of the deed to John Holly by them, then Holly did not get a title by his deed, for it is also admitted that Mrs. Annie Lindsey was a minor at the time and could not convey any interest she had.

If this be true, then the court committed fatal error in refusing to allow Mrs. W. M. Lindsey to testify as to her intentions, as shown on page 16 of this record. The crux of the case depended upon the intention of the parties, as to whether or not they would move back to the homestead just as soon as W. N. Lindsey had removed the obstacle that had moved them from it, to wit, the lack of funds and the murder charge pending against him in the circuit court of Attala county. As shown in the case of *Moore* v. *Bradford,* 70 Miss. 71, and although the court tried to cure this by reversing himself later on in the trial and permitting W. N. Lindsey to testify as to the intentions of the parties, yet as the trial was before a jury, the manifest damage to the plaintiffs had already been done, and no doubt the jury greatly prejudiced against the plaintiffs by said action of the court; and especially so when the ruling was made after defendants had rested their case and the trial was near termination.

In connection with this, the court not only refused the plaintiffs the testimony as to the question of intention, but went further along this line by allowing and granting to defendants instructions that should reverse this case, if there was no other error in this record. The burden of proving abandonment is upon him who alleges it. 1 Ency. of Evidence 10; *Hicks* v. *Steigleman,* 49 Miss. 377; *Moon* v. *Rollins,* 95 Amer. Dec. 181.

This was an affirmative defense relied upon by the defendants as their sole and only defense to the action, yet the court by instructions 2 and 5 told the jury that the burden of proof was on the plaintiffs, to show that they had not abandoned their home. Instruction 2 is as follows:

"The court instructs the jury that unless you shall find by a preponderance of the evidence in this case that at the date plaintiffs executed their deed to defendants, they intended to speedily reoccupy the lands mentioned in this suit, you are directed to return a verdict for the defendant."

Instruction No. 3 announces the same principle, and in fact each instruction granted defendants is burdened with this same error, except, perhaps the last instruction.

Then too, there is a presumption in favor of these plaintiffs that this homestead once acquired, would remain a homestead and this presumption would entitle them to a judgment unless overcome by proof. This court has gone as far in that direction as any court of the land.

"The waiver of forfeiture of a homestead right should be declared only upon clear proof of an intention totally to relinquish and abandon such premises *animo non revertendi.*" *Campbell* v. *Adair,* 45 Miss. 170.

Now then we have the homestead established by these plaintiffs and in fact admitted by defendants, with temporary absence, with the entire defense made being abandonment, yet the court in the face of this presumption instructed the jury by these two instructions exactly in opposition to the law governing such cases.

Instruction No. ——, granted by the court to the defendants is of itself fatal to the judgment of the lower court. The instructions is as follows: "The court charges the jury that it is wholly immaterial whether Mrs. Annie Lindsey was of age, or a minor, or even signed the deed executed by W. N. Lindsey to J. F.

Holly, if the jury find from the evidence that said Lindsey had abandoned the land in this controversy as a homestead."

Now we have the court telling the jury by this instruction, that it was not necessary for Mrs. Lindsey to sign this deed, if they believe from the evidence that the said Lindsey had abandoned, etc., referring to W. N. Lindsey. If this is the law, any husband can, by leaving the premises or abandoning the home himself, defeat the wife's veto. The question in this case, was not whether W. N. Lindsey had abandoned the homestead, but was whether both Mrs. Annie Lindsey and the said W. N. Lindsey, had abandoned the home *"Animo non revertendi."*

If this last instruction announces the law governing deeds in such cases, then there is no necessity of requiring the wife's signature to a deed in any instance and the statute does not mean what it says.

We think, however, that this case was not a case for the jury, but should have been determined by the court. There is no dispute as to the facts, except in one particular and that was not such as would raise a question of fact to be determined by a jury. This dispute is as to whether or not W. N. Lindsey told John Holly that Mrs. Lindsey would not live on the premises in controversy prior to the execution of the deed. It was not contended that Mrs. Lindsey was present or that the statements of W. N. Lindsey were made with her knowledge, and as to her was hearsay and incompetent.

If we admit that W. N. Lindsey made such statements, then they do not bind Mrs. Lindsey. This identical point was settled by this court in the case of *Hinds* v. *Morgan,* 75 Miss. 509, the court there holding that the statements of the husband did not bind the wife, and that a deed to the homestead signed by the husband who claimed that the family or wife did not reside upon the same was absolutely void. Now this was the only conflict in the evidence, and we submit that as a matter of

law, this statement if made by Lindsey, did not and was not of such import as to entitle the defendants to go to the jury.

*Teat & Niles,* for appellee.

Counsel for appellants in the opening of his brief commendably states that the only question worthy of consideration in this case is whether or not the homestead had been abandoned at the time of the execution of the said deed. This is the only question which we deem pertinent to argue to the court upon this motion.

The question therefore raised is a simple question of fact. The record conclusively shows that the appellants had abandoned the lands in controversy before the sale took place, and had located in a distant neighborhood. The sale of the lands to John F. Holly is the clearest proof and the strongest declaration of their permanent abandonment of their home. Seven years had lapsed, during which time, the appellant did not set up any claim to the premises mentioned as their homestead.

And there is not a single act or circumstance supporting appellant's contention from the time of the execution of the general warranty deed by the appellant to the appellee, John F. Holly, until the declaration filed in this suit. This was the state of the record as to their conduct. The appellee, John F. Holly, upon receiving said deed, went to work to improve said lands, and spent money in a considerable compartive sum during said term of seven years, not having any notice of plaintiff's purpose to contend for the homestead exemption.

There was some testimony admitted in evidence on the part of Lindsey and his wife, stating their secret intention to resume occupancy of the said land as their homestead. In this attitude of the case it was submitted to the jury for a finding of fact as to whether or not the homestead had been abandoned.

The court was manifestly correct in submitting this question of fact to the jury. It is true that the contra-

dictions of the testimony were not numerous, but the facts and circumstances were contrary to the testimony of the appellants. Their unusual long absence, unexplained and the continual improvements of the lands by the appellee, without notice of such contention, constituted such question of fact as comes within the general rule as being one about which reasonable minds might differ, and therefore should have been submitted to the jury. This has been repeatedly held. *Grand Trunk Ry. Co.* v. *Ives,* 144 U. S. 408; *Bell* v. *R. R. Co.,* 87 Miss. 234; *Railroad Co.* v. *Mason,* 51 Miss. 234; *Whitney* v. *Cook,* 53 Miss. 551.

There are many authorities cited by counsel for plaintiffs which are irrelevant, and have no bearing upon the question under consideration. The case of *Collins* v. *Bounds,* 82 Miss. 451, is predicated on a very different statement of facts; the abandonment being less than a year and the possession continuous; the wife refused to execute the deed, and the grantee was thereby given notice so that the doctrine of estoppel did not apply. This case conversely supports our contention, to wit: That an abandonment without contention for seven years is a complete abandonment of the homestead, and that it was wholly immaterial whether Lindsey's wife signed the deed or not.

The matter of casualty and necessity urged by plaintiffs was not proven to have existed during their entire absence. The court might well have granted a peremptory instruction to the defendants, but pursuing the safer and wiser course of trial courts properly submitted this question of fact to the jury.

The court will observe that it is a universal rule that where abandonment is shown of the homestead, and the question arising as to whether or not it is *animo revertendi* or *animo non revertendi* is a question of fact, and is for the chancellor to find upon the facts or the jury to find upon the facts. The proposition is supported by

every authority cited by counsel for the appellants touching this question. We call special attention to the authority cited by counsel of *Bolen* v. *Lily et. al.,* from the circuit court of Pontotoc county, 85 Miss. 344.

Where abandonment is proven as in this case by both appellants, the burden of proof shifts and is upon them to show the same was done *animo revertendi*. *Allen* v. *Poole,* 54 Miss. 323; *Forth* v. *Lightfoot,* 18 Ky. L. Rep., 993; *Moreland* v. *Burnhart,* 44 Tex. 275; 1 Ency. of Evidence, 10.

The removal from the homestead, of itself, raises a presumption of abandonment of the homestead and throws upon the claimant the burden, that the removal was only temporary, and was accompanied with a *bona fide* intention to reoccupy same as a homestead. *Moore* v. *Bradford,* 70 Miss. 70; *Murphy* v. *Hune,* 75 Ala. 438; *Harper* v. *Forbes,* 15 Cal. 202; *Cohen* v. *Davis,* 20 Cal. 187; *Kloss* v. *Wylesalek,* 207 Ill. 328; *Newman* v. *Franklin,* 69 Iowa, 244; *Hoffman* v. *Bushman,* 96 Mich. 538; *Smith* v. *Bunn,* 75 Mo. 559; *Kaes* v. *Dross,* 92 Mo. 647; *Bloomer* v. *Albright,* 64 Neb. 249; *Blackburn* v. *Lakeshore T. Co.,* 90 Wis. 362; *Jackson* v. *Sackett,* 146 Ill. 646.

In the last case cited the court holds: "Where there is a removal from homestead premises it will be taken as an abandonment unless it clearly appears that there is an intention to return and to reoccupy it."

The fact in this record, to wit: the General Warranty Deed; the long lapse of time of the plaintiffs from the actual occupancy of said premises as their homestead; their continued silence in not claiming it as a homestead, constitutes such pregnant facts as to make the question of abandonment, right of homestead exemption, and purpose to return a question of fact to be determined by the jury.

We therefore, submit that the case was fairly submitted to the jury upon the testimony and instructions granted,

and that the finding of the jury is a question of fact peculiarly within their province, and that the court is without authority of law to disturb their finding.

Rᴇᴇᴅ, J., delivered the opinion of the court.

This is an action of ejectment, brought by appellants, husband and wife, to recover of appellees the possession of a tract of land containing one hundred and twenty acres in Attala county. It is claimed that the land was the homestead of appellants when they executed the deed conveying it to appellee John F. Holly, and that Mrs. Lindsey was then a minor, and therefore her act in joining in the deed for the purpose of consenting to the sale of the homestead was invalid. Counsel for appellants and appellees in their briefs discuss only the question whether the homestead had been abandoned at the time of the execution of the deed. They appear to agree that, as the wife was under legal age, her act in executing the deed did not make it valid, if the property was a homestead and had not been abandoned.

Appellant W. N. Lindsey owned the tract of land in question when he married in December, 1902. Shortly after this marriage and his occupancy of the land as a homestead, and on or about December 18, 1902, he was arrested and taken to the county jail. There he was imprisoned until March, 1903. During his imprisonment his wife moved from the land to her father's home. There he went to reside with her when he was liberated. He never returned to live on the land he owned. On October 17, 1903, the property was sold and conveyed to John F. Holly. It appears from the record that he only actually occupied the land as a homestead for a few days in December, 1902. When first examined on the trial of the case he testified as follows regarding his removal from the home: "Q. On the 17th day of October, 1903, you and your wife deeded the land to Mr. Lindsey? A. Mr. Holly. Q. You moved away, and have never been

back there since? A. We was not there when we deeded the land to Mr. Holly. Q. Where were you living at that time? A. At my father-in-law's. Q. When Holly got the land, you were not living there? A. No, sir; I was living over, about a mile, at Mr. Hunt's. Q. And your wife was living up there with you? A. Yes, sir." He states that about in July he went to the land, and plowed and planted some corn, and he also got out some palings. Upon being recalled, after the defendants had rested, Mr. Lindsey testified that it was not his intention to stay at his father-in-law's house when he went there. He said: "I did not intend to stay there no longer than possible. I intended to go back to the place just as soon as I got something to live on." Mrs. Lindsey testified that she lived in 1903 at her father's, and that she never returned to the land owned by her husband. She also stated that her husband got out some palings to make a garden, and planted some corn.

Appellee John F. Holly testified that Mr. Lindsey requested him to purchase the land, and that he bought it at Mr. Lindsey's own price. Testifying relative to what occurred at the time of the purchase, and what Mr. Lindsey said in reference to the land and his continuing to live on it, Mr. Holly said: "Q. What did Mr. Lindsey say to you about this land at the time you purchased it? A. He came to me up there, and wanted to know if I would buy the place, and I told him that I was land poor and in debt, but if he wanted to sell it I would buy it. Q. What did he say about living on it, if anything? A. He told me that he was going to sell it, and that he was not going to live on it, for the way the boys treated him about the crossroads scrape—he was not going to live on it. He was going to sell it for what he could get for it, and he asked me what I would give him for it, and I told him that I would give him one hundred and fifty dollars. He said that if I would get up one hundred and fifty-five dollars I could have it. Q. Did he say

anything about his wife living on it?   A.   He said his wife was not going to live on it.''

The evidence clearly shows that Mr. Lindsey never returned to take up his residence on his land after he was released from prison, and it does not appear that he made any effort to recover the land or to re-enter the possession thereof until the bringing of the present suit, some seven years after he conveyed the land.   After the defendants had finally rested, the plaintiffs, appellants here, moved the court to exclude the testimony offered by defendants and direct the jury to find for them, because the evidence showed that they had occupied the land as a homestead and the defendants had failed to show any proof of abandonment thereof.   This motion was overruled, the trial court deciding the question of abandonment, and the necessity for the wife joining in the deed, because the property had not been abandoned, was for the jury.

At the time of the execution of the deed, had the homestead been abandoned, so that it was not necessary for the wife to join in the deed thereto in order to make the conveyance valid?   Section 2157 of the Code of 1906 reads:   ''Ceasing to Reside on Homestead Renders It Liable.   Whenever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed.''   W. N. Lindsey did not voluntarily leave his homestead. He was required to go because of his arrest and imprisonment.   He ceased to reside on the homestead out of necessity, arising from his confinement in jail.   So long as he was in prison and could not reside on his homestead, it cannot be said that he lost his right thereto by reason of his having abandoned it.   Abandonment implies a voluntary act, and there could be no voluntary act by him amounting to an abandonment under the circumstances.

Now, did he abandon the homestead after his release from prison? Does the testimony in this case show abandonment, so that his homestead right is lost, and that it was unnecessary for his wife to join in the conveyance of the land? In the case of *Salter* v. *Embrey,* 18 South. 373, it was decided: "Where a husband, owning a homestead, took up his residence in another state, at the direction of his employer, but, after being discharged, did not return, such removal constituted an abandonment, and was not within Code, section 1981, providing for the retention of the homestead when the removal was temporary, and by reason of some necessity." The opinion, delivered by Cooper, C. J., shows that John T. Salter was the owner of land in this state; that it was necessary for him to reside in Memphis, because of his employment of roadmaster of a railroad; that when he was discharged by his employer he moved to Arkansas to seek employment, and there remained until his death, which resulted from lingering illness; that while in Memphis and in Arkansas he often expressed a resolution to return to his home in Mississippi, but failed to do so because of pecuniary inability; that his wife was always anxious to return to her home in Mississippi, and would not have left it, but was forced to do so because of her husband's removal to Memphis. Mr. Salter executed a deed of trust on the property. He was not joined in it by his wife. It was claimed that the former homestead, included in the land in Mississippi, was not conveyed by that deed. It was decided that, on the facts stated "there was an abandonment of the homestead by the husband, who owned the land, and who, as the head of the family, was entitled to select the domicile."

Abandonment is a fact to be proved. From the statute it seems that ceasing to reside on it without the purpose of speedily reoccupying it as soon as the cause of absence can be removed amounts to an abandonment. We believe in this case that all the facts and circum-

stances show that the home was abandoned by Mr. Lindsey. We do not think that the trial court erred in overruling the motion filed by appellants for the court to instruct the jury to find in their favor, and in deciding that the evidence presented a question of fact for the jury's decision. We note the statement made by Judge TARBELL in delivering the opinion in *Campbell* v. *Adair*, 45 Miss. 170, to the effect that the waiver of forfeiture of the homestead right should be declared only upon clear and decisive proof of an intention to wholly relinquish and abandon such right, accompanied by a removal from the premises. It seems to us that the facts in this case, considered in the light of the decision in the case of *Salter* v. *Embrey*, supra, present such proof.

It is contended that the case should be reversed because the court erred in granting the instruction for defendants, appellees here, to the effect that, unless they should find by "preponderance of all the testimony in this case that, at the date plaintiffs executed their deed to the defendant, they intended to speedily reoccupy the lands mentioned in the suit, you are directed to return a verdict for the defendant." From the whole record, it is apparent to us that the verdict is right on the facts of the case. In truth, it seems to us that the trial court would have been justified in giving a peremptory instruction to find for appellees. Therefore we conclude that there is not error in the instruction sufficient to require a reversal of the case.

*Affirmed.*