· CHRISMAND, Sheriff, *et al. v.* MAULDIN.

[94 South. 1, No. 22896.]

1. HOMESTEAD. *Property must be owned and actually occupied by the party entitled to exemption.*

Under section 2146, Code of 1906 (Hemingway's Code, section 1821), in order to hold as exempt from seizure or sale under execution or attachment, the land and buildings must be owned and actually occupied as a residence by the party entitled to the exemption.

2. HOMESTEAD. *Intention to occupy, coupled with placing of furniture on premises, insufficient to create exemption in absence of declaration.*

The mere intention to occupy and reside upon the premises as a home at some future time, and the placing of some household furniture thereon, is not sufficient to create the homestead exemption, in the absence of the statutory declaration. Section 2148, Code of 1906 (Hemingway's Code, section 1823.)

APPEAL from chancery court of Choctaw county. HON. T. P. GUYTON, Chancellor.

Suit by L. C. Mauldin against W. R. Chrismand, Sheriff, and others. From a decree for plaintiff, defendants appeal. Reversed, and judgment entered for defendants.

*McLean & McLean,* for appellant.

The law in this state as we understand from the repeated rulings is that in order for the property to be exempt it is essential that it shall not only be claimed but actually occupied as a residence by the debtor. Actual occupancy is the *sine qua non* absolutely essential; indeed this is our statute upon the subject and was so declared by this court in the following cases: *Campbell* v. *Adair,* 45 Miss. 170; *Roberts* v. *Thomas,* 94 Miss. 219; *Bennett* v. *Dempsey,* 94 Miss. 406; *Mounger* v. *Gandy,* 110 Miss. 133; *Tanner* v. *Tanner,* 111 Miss. 460; *Nye* v. *Winborn,* 81 So. 644.

When the homestead right has once attached, continuous, actual occupation is not indispensable to preserve it. But in the case at bar the premises had never been occupied when the sale was enjoined nor had it been dedicated or used as a home and consequently the right never attached. Of course after the right has once attached by virtue of having been actually occupied for homestead purposes, the occupation thereafter need not be actual in order to preserve the right but may be constructive. This is well settled by many authorities. But before a homestead right has attached, it is imperative that the occupation be actual and not constructive. In order to impress upon the premises the qualities of homestead, it is first of all necessary to actually live on the premises and thereby dedicate the same as a home. But the right cannot attach by constructive occupation. One may preserve the homestead character by constructive occupation but one can never create an exemption thru constructive occupation. In other words, if appellee had actually moved upon the premises prior to May 2, 1921, he could thereafter preserve the homestead through constructive occupation, having already impressed the exemption qualities upon the premises by actual oc-

cupation. But appellee did not actually occupy the premises until after May 2, 1921, and consequently the judgment lien of appellant was not defeated because the occupation was not before the day of sale.

*Campbell* v. *Adair, supra,* is supported by many authorities aside from the subsequent decisions of this court: "The purpose of homestead laws being to secure the family their usual place of residence, actual occupancy of the premises at the time of the levy or sale is generally required." 21 Cyc. page 471.

"Occupancy being usually required before the homestead privilege attaches, if the premises are not actually resided upon at the time of the levy, they cannot be claimed as exempt. 21 Cyc. page 512.

"While under some statutes, it has been held that occupation is not necessary to secure a homestead and that possession only will be sufficient, it is the general rule that not only must there be possession but there must also be occupancy of the premises, for occupancy is the very essence of a homestead. 13 Ruling Case Law, page 591 (Sec. 56) citing among numerous cases, the decision of this court in *Bennett* v. *Dempsey,* 94 Miss. 406.

The case of *Campbell* v. *Adair, supra,* has been approved by STEVENS, J., in the case of *Mounger* v. *Gandy,* 110 Miss. 133; and again by POTTER, J., in the opinion in the case of *Tanner* v. *Tanner,* 111 Miss. 460; and again by SYKES, J., in the case of *Nye* v. *Winborn,* 81 So. 644.

The case of *Nye* v. *Winborn, supra,* is somewhat similar to the case at bar. In that case the debtor lived at Mount Olive, and farmed a small tract of land about two and one-half miles from his home; neither the combined value of the house in which the debtor lived and the farm which he cultivated, exceeded the exemption allowed. The court, however, held that he was only entitled to exemption upon the house in which he lived and that the farm was subject to his debts, and this too in face of the fact that the debtor had executed a good and valid homestead declaration, claiming both the house and the farm as his homestead, for, the

court says: "In order for the land to be exempt under the plain language of the statute, it must be owned and occupied as a residence."

We therefore submit that the appellee has not complied with the statute and the decisions of this court in order to be entitled to the benefit of the exemption. That his failure to dedicate and use the premises as a home prior to May 2, 1921, defeated his right to the exemption, and consubsequently the decree of the learned court below should be reversed and judgment entered here for appellant.

The appellee seeks to answer the above contention by saying that before the day of sale he had made a declaration selecting this property as his homestead, and that while he was not in actual occupation yet he intended to occupy the same as his residence at some future date, and he offered said declaration as evidence thereof. The court sustained the objection to this declaration upon the ground that the same had not been properly made, or in other words, upon the ground that the notary public, before whom the acknowledgment was made, did not affix his official seal to the same. This was correct for it is well settled that where an officer fails to attach his seal, the instrument is not recordable.

Section 3452 of the Code of 1906 (sec. 2785, Hemingway's Code), provides that a notary public shall take acknowledgments to deeds, etc., and to "certify the truth thereof, under his seal of office." Section 3448 of the Code of 1906 (sec. 2781 Hemingway's Code), says that a notary public shall provide himself with a suitable seal and "his official acts shall be attested by his seal of office."

Section 3448 of the Code 1906 (sec. 2781, Hemingway's Code), says that a notary public shall provide himself with a suitable seal and "his official acts shall be attested by his seal of office." Section 2798 of the Code of 1906 (sec. 2299, Hemingway's Code), provides that every instrument proper to be recorded may be acknowledged before certain officers, "who shall certify such acknowledgment or proof under the seal of his office."

Now it is manifest that in order for any act of a notary public to be good or admissible in evidence, that act must be certified "under the seal of his office." In the case at bar the record does not show that any seal at all was affixed, and while the recording of the seal is not necessary, yet the certificate that the official seal is attached is essential. In the acknowledgment to the homestead declaration in the case at bar the officer simply stated "Given under my hand, the 18th day of April, A. D. 1921;" it is not sufficient that there be in fact a seal attached to the act, or that he sign himself "Notary Public," but that he must certify to the fact under his seal of office. The seal is absolutely essential to a proper certificate: *Trerise* v. *Bottego,* 108 A. S. R. 553 (Note), and especially, *Mason* v. *Brock,* 52 Am. Dec. 492.

Our statute says that the notary must certify under the seal of his office. Now how can one ascertain that the seal attached is the official seal unless the officer himself so certifies? In the case at bar no seal was attached. But even if a seal was attached the acknowledgment is bad. Cases directly in point. *Dawsey* v. *Kirvin* (Ala.) 7 A. L. R. 1658; and notes, Ib, page 1669; 83 So. 338; *Breitling* v. *Marx* (Ala.), 26 So. 203; *Austin* v. *Whitlock* (Va.), 4 Am. Dec. 550; *Wentmore* v. *Laird,* 5 Biss. 160; Federal Cases No. 17,467.

It therefore follows that the acknowledgment being defective the declaration was not entitled to be recorded. And although recorded it was not notice to third persons, and was not admissible in evidence. *Tinnen* v. *Brown,* 98 Miss. 397.

But waiving this question, it is manifest that the court erred, for after sustaining the objection to the introduction of the declaration by the debtor, the court sustained the bill and held that the property was exempt.

*Homer Lee,* for appellee.

It is submitted herein, has the appellee argued himself out of court in saying that he nor any member of his

family ever occupied the premises for homestead purposes? That he did not occupy same as a residence? Or, that the said premises were not dedicated or used as a home? There is nothing in our statute which says residence thereon is absolutely necessary. It says in effect any householder shall hold exempt from execution the lands and buildings owned and occupied as a residence.

We submit, how could the appellee live with his family in a half constructed house? He did everything a reasonable man would have done under the circumstances. His exemption was declared February 18, 1921, he moved his furniture there in March, 1921, and went to the Hotel to wait the completion of the house. Just as soon as this was done he took his actual residence thereon in May, 1921. Was the property exempt from execution?

The rule in many jurisdictions turns on the spirit of the law rather than on the literal construction, and is to the effect that there must be occupancy in fact or a clearly defined intention of present residence and actual occupation delayed only by the time necessary to effect the removal, or to complete needed repairs on a dwelling in process of construction. That the intention must be shown by actual preparation of visible character.

It is said that the rule that conforms most nearly to the spirit of the homestead law is, that a *bona-fide* intent to occupy the premises as a homestead, even though not immediately consummated will be sufficient if followed by acts of preparation for use. See 70 American Dec., page 347, and numerous cases listed.

Looking at our statute on the subject we read that the lands and buildings are exempt which are owned and occupied as a residence. It is true that in the cases cited by the appellants, actual occupancy was a requirement to the claim of exemption, thereby making the exemption, if he wished to retain the land against his creditors and not to be made a subject of charity, to live thereon whether he had no home or place to protect him from the elements. Such a construction to be put on the statute is not natural nor

was it intended. How could one come into this state, wishing to build his house, realize his wish? If he builds, the law laid down in the rulings of the courts of this state, he is forced to race to beat the sheriff on the completion of the home, to prevent its being sold under execution, after possibly putting into the property all the money he has. If one, building his house and owning no other property, is compelled to spend sleepless nights during its construction, expecting momentarily the sheriff to notify him, he is broke, and must start all over again, it is certainly not within the meaning of the homestead laws' as interpreted by the courts of the various states in this country. Such would be the consequences if the court in the case at bar follows other decisions in our state.

It is a general principle that the homestead right is favored in law and when there is a serious doubt as to whether land is a homestead it should be solved in favor of the exemptionist. *Neal* v. *Coe,* 35 Iowa, 407; *Fogg* v. *Fogg,* 40 N. H. 282, 13 L. R. A. at page 519. In the case of *King* v. *Sturges,* reported 56 Mississippi page 607, where one owned forty acres of land, there is no house on it, the owner of the land lived in a house situated on railroad property as tenant at will. This house being three hundred yards away from the forty-acre tract, which he cultivated. Action was brought by Sturges for the recovery of the forty acres, he claiming title by virtue of a deed from the sheriff, based upon a sale under an execution and judgment against King. *Held* that King, the owner, within the meaning of the statute was within such actual possession of the *locus in quo,* as to constitute it his homestead.

Now matching the case with that now cited by the appellant, *Wye* v. *Winborn,* 87 So. 644, who states it is similar to the case at bar, which is seriously questioned, because in that case the debtor owned the home at Mt. Olive as well as lived there, and farmed the tract, which the court denied him even under a valid homestead declaration, and although its value and the value of his Mt. Olive home did not exceed the exemption allowed. Why? Because of

the strict compliance rule, together with the fact that the debtor owned and lived in the Mt. Olive home. It is obvious that the strict rule is harsh and not intended. If the debtor had not owned his home in Mt. Olive he would have been made an object of charity. In that event would the court have allowed a constructive occupation in order to save one from being a vagabond?

In the case of *Campbell* v. *Adair*, 45 Miss. page 170, in which there was presented a question of abandonment *vel non* by wife and daughter of the premises, the right to homestead having attached in the first instance. The property was not under construction as in the case at bar when the court said "occupancy is an essential element," in speaking of the place of residence as a home. This occupancy referring to a place where such is possible as in the case so decided. As we have said in that case, there was no construction of the house, and further in the opinion it is said that "as a general rule to constitute a homestead, there must be actual occupation and use of the premises as a home." This, we call the court's attention to, is given with all the facts of the case plainly understood. That case was different from case at bar.

In the case of *Tanner* v. *Tanner*, 111 Miss. 460, the party lived on one tract of land and claimed another which he farmed, the court denied the other, and said: "The test as to whether or not land is a homestead is its use for that purpose and actually occupied for a homestead." In that case, too, the facts do not parallel the case at bar. That is again applying the general rule of strict conformity—following a precedent peculiar to Mississippi law. Homestead laws are remedial in their nature and, according to the weight of authority, must be liberally construed. 21 Cyc. page 461; *Barnes* v. *White*, 53 Texas 631. Alabama has practically the same rule, as well as New Hampshire and Iowa.

The doctrine of Michigan is that actual residence upon the property is not an indispensable condition, to its being homestead, and as such, exempt from levy; the question

is "whether under the facts of the particular case the land became a homestead in a legal sense before the levy was made upon it." To bring it within the exemption when the land is not actually occupied, as such at the time, it must be made satisfactorily to appear that the intention in good faith exists to occupy it, as such, and this intention must have existed, prior to and at the time of levy. *Bowles* v. *Harod,* 71 Mich. 154; *Mills* v. *Hobbs,* 76 Mich. 125. Iowa allows constructive occupation. *Neale* v. *Coe, supra.*

In Wisconsin the rule is that a *bona-fide* intention of acquiring the premises for a homestead without defrauding any one, evidenced by overt acts in fitting up the place, followed by actual occupancy will give the exemption. *Scholielf* v. *Hopkins,* 61 Wis. 375; Hemingway's Code 1906, sec. 2157.

This statute pre-supposes a residence on the property having been rightly obtained, and named a penalty, by saying if the residence is not continued, the property shall be liable for debts with the saving clause unless his removal be temporary because of necessity or casualty. This saving clause suffices to apply in the case at bar, in that it was necessary for the debtor to keep away from the house in question. The law does not presume to force any one to endanger their lives in order that they may enjoy what is rightfully theirs, and, therefore, it says if because of necessity one is absent from his home (not saying one under construction or not) his home is exempt.

We submit, could there have been a greater necessity than what existed to keep the debtor from moving his family into the partly finished house? After the right of the homestead once exists, it being designated and occupied for that purpose, the occupation after this, need not be actual. This is a well-understood principle by all the authorities on the subject. What protection is in a law that allows a constructive holding but not a constructive obtaining? How can a new home being erected be secure from execution if it is not permissible to obtain it by construc-

tive notice?  We submit the occupation of the premises was in March, 1921, when the furniture was placed therein.

The appellee in this case fully intended to make the house his home, and has done everything he could have done under the circumstances.  He moved into the house just as soon as it was ready.  Having been occupied, before the date of sale, the premises are exempt, for at page 471 in 21 Cyc., it says: "That actual occupancy of the premises at the time of the levy or sale is generally required."

The facts and proof show that the occupancy by construction occurred in March, 1921, and that the date of sale was May 2, 1921, the date when the sale was enjoined. We submit that the appellee has complied with the spirit of the statute, and the decision of the courts generally on the subject.  That there was no failure to use the premises as a home and the right to claim the exemption had been perfected before May 2, and consequently the decree of the court below should be sustained, and judgment here be entered for the appellees.

HOLDEN, J., delivered the opinion of the court.

This suit involves the question of whether a judgment debtor may claim a homestead exemption against sale under execution by the judgment creditor, where the debtor does not actually occupy the land, claimed as the homestead, which is levied upon and offered for sale under the execution.

The suit was started by an injunction secured by appellee, Mauldin, against the appellant, sheriff, restraining the sale under execution of certain land claimed by appellee as a homestead upon which the judgment creditor had levied execution to satisfy a judgment against appellee.  On the day, to wit, May 2, 1921, when the sale was to take place under execution by the sheriff, the injunction was obtained and the sale stopped, and afterwards, on motion to dissolve, the court decreed that the injunction be made perpetual.  From which decree the judgment creditor appeals.

The case was tried in the lower court upon an agreed statement of facts which we here set out in full:

"That the Security Bank & Trust Company, on the 18th day of February, 1921, obtained a personal judgment against L. C. Mauldin and one T. B. Stanley, in the circuit court of the Second judicial district of Choctaw county, Ackerman, Miss., in the sum of seven thousand seven hundred eighty-eight dollars and thirteen cents, which judgment was duly enrolled on the 28th day of February, 1921.

That on the 28th day of February, 1921, execution was issued against the said Mauldin, and the property described in the bill of complaint, which property is claimed by complainant to be a homestead, was levied upon on March 22, 1921, and advertised to be sold on May 2, 1921. That prior to the 2d day of May, 1921, neither the said Mauldin nor any of the members of his family ever occupied said premises for homestead purposes, that is, the said Mauldin did not occupy said premises as a residence, nor were said premises dedicated or used as a home for the family, nor was he at any time in actual occupation of said premises as a homestead prior to May 2, 1921."

It will be observed from the facts that the appellee, Mauldin, and his wife, had not actually occupied the land, which they claimed to be exempt as a homestead prior to the time the injunction was issued and the sale stopped. The only claim made by appellee, Mauldin, is that while they had not lived on the premises nor occupied the same, they had placed part of their furniture in the uncompleted house that was then being erected upon the land; that they intended to move upon the premises and occupy it as a homestead at some future time when the residence was sufficiently constructed for them to live in, but they had not occupied the premises themselves at any time.

The appellee seems to contend that the land levied on was exempt as a homestead because he intended to occupy it as such, and had put some of their belongings upon the premises before the date of the sale and injunction, and that this amounted to a constructive occupation of the

premises, which was sufficient to justify the claim of homestead exemption. We are convinced there is no merit in the contention of the appellee that the premises, under the facts in this record, were exempt from execution and sale to satisfy the lien of the judgment creditor. A mere intention to occupy the premises, coupled with the act of installing a portion of the household goods thereon, is not an occupation of the land as a residence, as specified by the statute granting such exemption.

The exemption statute means that the premises must be owned and actually occupied by residing thereon by the person or persons specified in the statute, before the right to claim the benefit of the exemption exists. We do not think the statute contemplates constructive occupation of the premises as giving the right of the exemption, but it intends to require residence and actual occupation before the exemption will arise and defeat the judgment creditor. *Campbell* v. *Adair*, 45 Miss. 170; section 2146, Code of 1906 (Hemingway's Code, section 1821).

We have considered the case and decided it upon the facts showing the *status* of the rights of the parties up to the time the sale was stopped by the injunction. We have not considered the *status* that arose after the sale was stopped or that may arise before the execution sale is finally made. The *status* of the case at the time the injunction was granted is the test before us at this time.

The judgment of the lower court is reversed, and judgment entered here for the appellant.

*Reversed, and judgment here.*