JERRE S. WILLIAMS, Circuit Judge:
 

 I.
 
 Facts
 

 Owen Temple operated a gas station in Jackson, Mississippi. He leased his premises and bought his gas and supplies from Joe Dehmer. Owen’s wife, Joyce, also worked and earned about $1,000 per month. Around 1965, Owen and Joyce acquired two tracts of land containing about thirty-seven acres each in Madison County, Mississippi, near the city of Canton. They obtained one of these tracts from Owen’s mother “in exchange for a home as long as she lived.” They owned these two lots jointly and lived together with Owen’s mother in a house on one of the tracts. The Temples bought a third tract around 1971 for about $580 per acre. Owen held title to the third lot in his name only.
 
 [1]
 
 All together, the three lots included about 143 acres, and the Temples listed the entire 143
 
 *1465
 
 acres on their Homestead. Exemptions filed with the state.
 

 In October 1980, the Temples separated but did not divorce. Owen’s mother and Joyce remained on the Madison County property, and Owen moved to Jackson.
 

 By early 1981, Owen’s business had deteriorated. He owed Dehmer over $60,000 but could not pay.
 

 On April 7, 1981, Owen quitclaimed his interest in the three lots to Joyce.
 
 [2]
 
 In return, Joyce promised to provide care and a home for Owen’s mother who was then seventy-two. Throughout 1981 and 1982, Owen visited his mother and Joyce in Madison County, but he continued to live in Jackson.
 

 Business did not improve. On October 23, 1981, Owen worked out a plan to pay off his debt to Dehmer. Owen signed a promissory note for $66,607.59, the amount of his overdue account, and agreed (1) to pay Dehmer $2,000 per month to retire this debt and (2) to pay for new purchases of gas within five days of delivery. Dehmer also took a security interest in Owen’s inventory, equipment, accounts receivable, and other collateral. Owen continued to operate until July 26, 1982 — sometimes paying Dehmer the $2,000 per month and sometimes not — and then filed a Chapter 7 bankruptcy petition. At the time of filing, he had virtually no assets, but he still owed Dehmer over $60,000. His other creditors included the First National Bank of Jackson ($25,000) and the Mississippi State Tax Commission. On October 12,1982, Dehmer sued in bankruptcy court to set aside Owen’s 1981 conveyances and recover the Madison County property.
 

 II.
 
 Proceedings Below
 

 After a hearing on Dehmer’s October 12 complaint, the bankruptcy court set aside Owen’s transfer of the sixty-nine acre tract as fraudulent. The court found that (1) Joyce gave as consideration for the conveyance only her promise to care for Owen’s mother, (2) after the conveyance, Owen had insufficient property to pay his debts, and (3) Dehmer had extended credit to Owen knowing and relying on the fact that Owen owned the Madison County property.
 
 [3]
 
 Joyce appealed to the United States District Court. The district court affirmed the bankruptcy court on the grounds that Owen had rendered himself insolvent by the conveyance to Joyce.
 
 Dehmer v. Temple,
 
 44 B.R. 992 (S.D.Miss.1984). The district court also found that Owen had “abandoned” the Madison County property when he left in 1980. The district court remanded, however, for the bankruptcy court to value the Temples’ property and to determine whether Owen’s quitclaim of his interest in the two smaller tracts also was fraudulent.
 

 On remand, the bankruptcy court held that (1) the property was worth $750 per acre plus $50,000 for the house and (2) all three tracts were conveyed fraudulently. The bankruptcy court also ruled that Joyce did not consent to Owen’s abandonment of the homestead. The district court affirmed these findings and held that Joyce may keep from Owen’s creditors the greater of (1) her interest in the house and the thirty-seven acre tracts or (2) $30,000, the Mississippi homestead exemption from creditors.
 
 [4]
 
 The district court also ordered that Joyce may select her homestead under Miss.Code Ann. § 85-3-27 within 45 days, or the Trustee may sell the property and pay Joyce $30,000 or the value of her interest, whichever is greater.
 

 Joyce Temple appeals, claiming that (1) the conveyances were not fraudulent and should not be set aside and (2) she should retain not only her own interest in the
 
 *1466
 
 property, but also all or part of
 
 Owen’s
 
 homestead exemption plus the amounts she had spent since April 1981 caring for Owen’s mother and maintaining the property. We review findings of fact under the clearly erroneous standard, but conclusions of law are subject to
 
 de novo
 
 review.
 
 See In re: Consolidated Bancshares, Inc.,
 
 785 F.2d 1249, 1252 (5th Cir.1986). In this opinion, we affirm the valuation of the property (Part III, infra) and the finding that Owen fraudulently conveyed his interests to Joyce (Part IV). We then modify and affirm the district court’s opinion (Parts V and VI).
 

 III.
 
 Valuation
 

 At hearings before the bankruptcy court, Joyce testified that the land was worth only $300 to $500 per acre, although she and Owen paid about $580 per acre in 1971 for the sixty-nine acre tract and about $590 per acre for one of the smaller tracts. Generally, a landowner’s opinion about the value of her land is admissible evidence.
 
 See United States v. 329.73 Acres of Land,
 
 666 F.2d 281, 284 (5th Cir.1982). In addition, in 1984 the Madison County Tax Assessor valued the land at $775 per acre and the house at $46,280. Finally, Ronald Craft, a real estate appraiser, testified by deposition that the land was worth $750 per acre and the house was worth $50,000. Craft did not perform a formal appraisal; rather, he observed the property from his car and made an “educated guess” about its value. Craft, however, was an experienced appraiser who also owned property in Madison County. In valuing the Temples’ property, he relied on his knowledge of comparable sales and land use in the area. At Craft’s deposition, Joyce’s attorney conceded Craft’s qualifications as an expert. Clearly, the courts below relied on Craft’s testimony, and they were entitled to do so. We affirm the district court’s valuation.
 

 IV.
 
 Fraud
 

 Title 11, § 544(b) provides that the trustee
 
 [5]
 
 “may avoid any transfer of any interest of the debtor in property ... that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under [11 U.S.C. § ] 502 ... or that is not allowable only under [11 U.S.C. § ] 502(e)_” Under § 544(b), transfers may be set aside in accordance with state law.
 
 See
 
 4 Collier on Bankruptcy ¶ 544.03[1] (15th Ed.1987).
 
 [6]
 

 Miss.Code Ann. § 15-3-3 (1986) voids “every ... conveyance of lands [with] the intent or purpose to delay, hinder, or defraud creditors.”
 
 See also
 
 37 C.J.S.
 
 Fraudulent Conveyances
 
 § 132 (conveyance is void, even if consideration was paid, if the parties intended “to hinder, delay, or defraud creditors”);
 
 Blount v. Blount,
 
 231 Miss. 398, 95 So.2d 545 (1957). In interpreting this statute, the Mississippi Supreme Court has stated:
 

 If a debtor, and especially if he be largely indebted, convey a substantial portion of his property for a nominal consideration or by way of gift, this is presumptively fraudulent as to existing creditors, and the burden will rest on the [debtor] to rebut the presumption by showing that [he] retained property easily accessible ... and amply sufficient ... to satisfy his then existing legal liabilities.
 

 Odom v. Luehr,
 
 226 Miss. 661, 85 So.2d 218, 219 (1956).
 

 Owen conveyed to Joyce the sixty-nine acre tract and his half interest in the house and the two smaller lots. Using the valuation approved above, this property was worth $104,781.25. In return, Owen received only Joyce’s promise to care for his mother. As set out above, however, the Temples obtained one of the tracts in 1965 from Owen’s mother “in exchange for a home as long as she lived.” The district court found that Joyce already had an obli
 
 *1467
 
 gation to care for Owen’s mother. The record does not show who — Owen, Joyce, or both of them — had to care for Owen’s mother under the 1965 contract. It is clear, however, that the Temples took the property from Owen’s mother jointly. The evidence supports at least a finding that Joyce had a joint obligation to care for Owen’s mother. As the district court ruled, Joyce’s promise to do what she already had to do was not consideration.
 
 See Associates Discount Corp. v. Southern Equipment Sales, Inc.,
 
 223 F.Supp. 837, 838 (S.D.Miss.1962) (applying Mississippi law).
 

 Joyce points out, however, that after the conveyances she assumed sole responsibility for the care of Owen’s mother. At a bankruptcy court hearing, Joyce testified that she spent over $2,000 for medical bills, clothes, burial insurance, and other care for Owen’s mother. We have made a careful analysis of the evidence, however, which shows that Joyce’s expenditures on behalf of her mother-in-law did not increase after the conveyances. We affirm the finding that Joyce paid “nominal,” if any, consideration.
 

 At the time of the conveyance, Owen was “largely indebted,” and he owned no assets other than the Madison County property. After the conveyance, he was insolvent and filed bankruptcy.
 

 The record clearly supports the district court’s finding that Owen intended to defraud his creditors by the conveyances. Thus, we must affirm the order setting the transfers aside.
 

 V.
 
 Mississippi Homestead Exemption
 

 Miss.Code Ann. § 85-3-21 (1986) provides:
 

 Every citizen of this state, male or female, being a householder shall be entitled to hold exempt from seizure or sale ... the land and buildings owned and occupied as a residence by him, or her, but the quantity of land shall not exceed one hundred sixty (160) acres nor the value thereof ... the sum of thirty thousand dollars ($30,000).
 

 See also Pickle v. Pickle,
 
 476 So.2d 32, 34 (Miss.1985) (the citizen/householder may claim homestead if he owns and occupies land as residence); 40 Am.Jur.2d
 
 Homestead
 
 § 52 (1968). As set out above, Joyce owned a half interest in the house and the two thirty-seven acre tracts. Her property was worth $53,031.25.
 

 With the conveyances set aside, Owen owned the sixty-nine acre lot plus a half interest in the two smaller tracts and the house. Joyce argues that the conveyances to her should be upheld to the extent of Owen’s homestead allowance or $30,000. Under Mississippi law, Owen could convey his homestead to Joyce “regardless of his intention toward creditors.”
 
 Howell v. General K Corp.,
 
 229 Miss. 687, 91 So.2d 831, 835 (1957),
 
 modified on other grounds,
 
 229 Miss. 687, 93 So.2d 175 ( 1957); 40 Am.Jur.2d
 
 Homestead
 
 § 63 (1968). The obvious reason for this rule is that the conveyance of a homestead, up to $30,000, does not “defraud” creditors, because the homestead is exempt from creditors irrespective of the conveyance. 37 Am.Jur.2d
 
 Fraudulent Conveyances
 
 § 104 (1968).
 

 The district court held, however, that Owen abandoned his homestead rights in the Madison County property when he moved to Jackson in October 1980. As set out above, one may claim the homestead exemption only in property “owned and occupied as a residence.” Miss.Code Ann. § 85-3-21;
 
 Kimbrough v. Powell,
 
 143 Miss. 498, 108 So. 498 (1926) (must own and reside on property to claim homestead);
 
 Chrismand v. Mauldin,
 
 130 Miss. 259, 94 So. 1 (1922). Moreover, Miss.Code Ann. § 85-3-43 (1973) provides:
 

 Whenever the debtor shall cease to reside on his homestead, it shall be liable to his debts, unless his removal be temporary, by reason of some casualty or necessity, and with the purpose of speedily reoccupying it as soon as the cause of his absence can be removed.
 

 If Owen voluntarily left the property without the intent to return, he abandoned his homestead rights.
 
 See Etheridge v. Webb,
 
 210 Miss. 729, 50 So.2d 603, 610 (1951);
 
 *1468
 

 Merchants National Bank v. Southeastern Fire Insurance Co.,
 
 751 F.2d 771, 777 (5th Cir.1985) (applying Mississippi law).
 

 At a bankruptcy court hearing in May 1983, over two-and-one-half years after leaving Madison County and moving to Jackson, Owen testified that he hoped he and Joyce could mend their marriage and get back together. He also testified, however, that since 1980 he had visited his mother and Joyce but had not lived at the Madison County property. We affirm the district court’s finding that Owen had abandoned his homestead rights in the Madison County property by April 1981, when he conveyed his interest to Joyce. Thus, Owen had no homestead in Madison County to convey to Joyce in April 1981.
 

 Joyce also points out that spouses have special rights under the homestead laws. Specifically, she claims that she may keep from Owen’s creditors (1) her interest in the Madison County property
 
 plus
 
 (2) $30,000 — the exemption she alleges Owen could have claimed had he not abandoned the homestead. Joyce cites Miss.Code Ann. § 89-1-29 and
 
 Chapman v. White Sewing Machine Co.,
 
 77 Miss. 438, 28 So. 735 (1900). We review the law on which Joyce relies, but we conclude that her theory lacks merit.
 

 Miss.Code Ann. § 89-1-29 provides: “A conveyance, mortgage, deed of trust, or other incumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse of the owner if the owner be married and living with the spouse.” Under this section, one spouse clearly can veto a conveyance of the homestead by the other spouse.
 
 See Hughes v. Hahn,
 
 209 Miss. 293, 46 So.2d 587, 590 (1950) (wife has veto power but no “interest” in the homestead);
 
 Philan v. Turner,
 
 195 Miss. 172, 13 So.2d 819, 821 (1943);
 
 Thompson v. Dyess,
 
 218 Miss. 770, 67 So.2d 721 (1953);
 
 Hudson v. Bank of Leaksville,
 
 249 So.2d 371 (Miss.1971). In fact, a conveyance made without both spouses’ consent is void.
 
 Welborne v. Lowe,
 
 504 So.2d 205, 207 (Miss.1987);
 
 but see Biggs v. Roberts,
 
 237 Miss. 406, 115 So.2d 151, 152 (1959) (holding that Mrs. Roberts could devise her half interest in the homestead property “because the property owned by Mr. Roberts greatly exceeded that which was owned by [Mrs. Roberts]”). Section 89-1-29 applies when the spouses are married and living together on the homestead. A spouse who is forced off of the homestead, however, retains the § 89-1-29 veto power.
 
 See Philan,
 
 13 So.2d at 821 (wife driven from homestead by abusive husband retained the right to veto conveyance);
 
 Robbins v. Berry,
 
 213 Miss. 744, 57 So.2d 576, 579 (1952) (wife left homestead because of husband’s cruelty).
 

 In
 
 Chapman,
 
 a husband and wife each owned a half interest in their homestead property, and the husband’s sole creditors sought to execute on his half interest. The Mississippi Supreme Court ruled that the creditors could get only the husband’s half interest
 
 minus
 
 the full amount of the statutory homestead exemption, then $3,000. The court reasoned that if Mr. Chapman had owned the entire homestead, he would have been able to keep $3,000 from creditors and that his exemption should not be reduced just because Mrs. Chapman owned half the property.
 

 Joyce concedes that if Owen had not abandoned the homestead, she would keep her interest in the property, and Owen would keep $30,000 of his interest exempt from his creditors. Now she wants to assert the alleged homestead exemption because Owen had abandoned it.
 

 It is clear that if Joyce had consented to Owen’s abandonment, then Owen would be free to convey or encumber his interest in the 143 acres. In
 
 Merchants National Bank,
 
 Judge Jolly explained:
 

 When a husband removes himself from homestead property without any intent to return
 
 and his wife consents,
 
 the homestead is abandoned, notwithstanding the wife’s continued residence on the land. [If the] homestead had been abandoned when the [property became encumbered], the encumberance would be effective as to [the husband’s] portion of the property.
 

 
 *1469
 
 751 F.2d at 777 (emphasis added).
 
 See also Lewis v. Ladner,
 
 177 Miss. 473, 172 So. 312 (1937) (expressly reserving the question of what would happen if the wife had not consented to the marital separation and the husband’s leaving);
 
 Lindsey v. Holly,
 
 105 Miss. 740, 63 So. 222 (1913).
 
 [7]
 

 We need not decide what rights, if any, Joyce retained under § 89-1-29 after Owen’s abandonment. Owen did not convey his interest in the property, nor did he encumber it with a deed of trust or mortgage. Moreover, after his abandonment, Owen could not claim an exemption in his
 
 former
 
 homestead. In fact, Owen, for all that is known in this case, may have acquired a
 
 new
 
 homestead, in which he may claim a $30,000 exemption from creditors. Clearly, Owen may not claim two homestead exemptions.
 
 See
 
 40 C.J.S.
 
 Homesteads
 
 § 13. Joyce, by asserting the alleged exemption that Owen abandoned, in effect claims two exemptions for herself in the Madison County property: one out of Owen’s interest and another out of her own interest. We illustrate the fallacy of this view with an example.
 
 [8]
 
 Imagine that
 
 Joyce’s
 
 creditors sought to execute on her interest in the 143 acres at the same time that Owen’s creditors sought to execute on his interest. Joyce claims that Owen’s creditors could get Owen’s interest in the property
 
 minus
 
 $30,000 and that her creditors could get her interest in the property
 
 minus
 
 $30,000. That is, Joyce claims that she could keep $60,000, or two exemptions in the one homestead.
 

 Chapman
 
 did not go so far. Moreover, Joyce concedes that each homestead has only one exemption. The Temples claimed all 143 acres as their homestead, and they may claim only one exemption in this property, which the district court allowed Joyce.
 

 Finally, the evidence showed that First Federal Savings
 
 &
 
 Loan held a mortgage on one of the thirty-seven acre tracts. Joyce testified that before and after the conveyances, she made the mortgage payments for the lot and also paid the property taxes for all three lots. We need not decide whether Joyce made mortgage or tax payments that benefited Owen or Owen’s creditors or whether Joyce, in addition to her legal half interest in the house and two smaller lots, also has an equitable interest in part of the Madison County property. She did not raise these claims in the bankruptcy court.
 

 VI.
 
 The Homestead Designation
 

 The Temples had declared the entire 143 acres as their homestead, and this declaration binds both Joyce and Owen.
 
 See
 
 Miss.Code Ann. § 85-3-27. The district court ruled that Joyce must select her homestead from the 143 acres within 45 days. We add that if Joyce fails to make such a selection, then Mississippi law will make one for her.
 
 See
 
 Miss.Code Ann. §§ 85-3-31 (designation by law), 85-3-37 (designation by committee).
 

 The district court held that Joyce may keep property worth at least $30,000, regardless of the value of her interest in the 143 acres. Dehmer does not challenge this holding, so we do not review it. We stress, however, that if Joyce’s interest in the property exceeds $30,000, she may keep the entire value of that interest from Owen’s creditors.
 

 VII.
 
 Conclusion
 

 We affirm (1) the valuation of the Temples’ property, (2) the finding that Owen abandoned his homestead rights in the Madison County property, (3) the finding that Owen fraudulently conveyed his interest to Joyce after his abandonment, and (4) the district court’s application of Mississippi’s homestead laws. If Joyce fails to select her homestead under Miss.Code Ann. § 85-3-27, the lower courts should follow Miss. Code Ann. §§ 85-3-31 and 85-3-37. We have reviewed various other claims by the
 
 *1470
 
 parties and find them to be without merit. As modified, the opinion of the district court is
 

 AFFIRMED.
 

 [1]
 

 . Mississippi, unlike Louisiana and Texas, is not a "community property” state, so Owen owned sole title to the sixty-nine acre lot, even though he acquired it during marriage. In a community property state, property acquired during marriage is presumptively property of the community-
 

 [2]
 

 . Owen originally conveyed his interest to Joyce on March 3, 1981, but because of an error in the property description in the March deeds, Owen executed corrected deeds on April 7.
 

 [3]
 

 . Dehmer testified at the Bankruptcy Court hearing that he asked Owen to borrow against his land to pay his debt.
 

 [4]
 

 .According to the district court’s valuation, which we affirm below, Joyce’s interest in the Madison County property was worth $53,031.25 —far more than $30,000. By letting Joyce choose to hold $30,000 exempt from Owen's creditors, the district court protected her in case the valuation was too high.
 

 [5]
 

 . Joyce Temple does not contest Dehmer’s right as a creditor to avoid transfers under § 544.
 

 [6]
 

 . The Bankruptcy Code contains its own provision for voiding fraudulent transfers made within one year of the debtor’s bankruptcy petition.
 
 See
 
 11 U.S.C. § 548. Dehmer, however, waited eighteen months before suing to void Owen’s conveyance, and he elected to proceed under § 544, which allowed him to invoke Mississippi law.
 

 [7]
 

 . In
 
 Lindsey,
 
 both husband and wife moved away from the homestead. The court held that the husband could convey his interest in the former homestead because
 
 he
 
 had abandoned it; the court did not discuss whether the wife also abandoned the homestead or consented to her husband’s abandonment.
 

 [8]
 

 . At oral argument, Joyce’s attorney suggested this example.