France v. Bell.

GEORGE B. FRANCE, APPELLANT, V. JOHN BELL ET AL., APPELLEES.

FILED JUNE 15, 1897. No. 7206.

1. **Appeal in Equity.** In all actions in equity either party may appeal from the judgment or decree or final order made by the district court to the supreme court. (Code of Civil Procedure, sec. 675.)

2. **Mortgages: FINAL ORDER: REVIEW.** In an action to foreclose a mortgage it was determined and adjudged that the mortgage was void and the mortgagee entitled to no relief thereon, and the action was continued for hearing of the controversy in regard to the indebtedness, the payment of which the mortgage purported to secure. *Held,* To be a final order in relation to the mortgage, within the meaning of the Code, and appealable.

3. **Deeds: HOMESTEAD: ESTOPPEL.** The mere fact that a grantor in a conveyance of a family homestead is described therein as a single person, will not estop the grantor from asserting the homestead character of the premises included in the conveyance or the right of homestead therein as against a grantee or mortgagee.

4. **Homestead: EXECUTION OF MORTGAGE.** The homestead of married persons may be property the title to which is in either the husband or wife, and to be valid a mortgage thereof must be signed and acknowledged by both the husband and wife. The fact that they are not living together at the time of the execution of the instrument does not affect the rule or rob it of any of its force.

APPEAL from the district court of York county. Heard below before BATES, J. *Affirmed.*

*Harlan & Taylor* and *George B. France,* for appellant.

*F. C. Power, contra.*

HARRISON, J.

This action was instituted in the district court of York county to foreclose a mortgage on lot numbered 2, in block numbered 25, in the village of York, York county, Nebraska, which had been given to secure to appellant the payment of a promissory note in the principal sum of $100. In the answer it was stated:

"Comes now the defendant Amanda M. Bell, and for

answer to the petition filed against her in said cause says that she has never seen the note set forth and described in the plaintiff's petition to her knowledge; that the original note, if such note exist, is in the possession of the plaintiff, and this defendant has no access thereto, and therefore cannot say whether her genuine signature appears upon said note or not, but she alleged the facts to be that if her signature and name signed to a note for $100, as set forth in the plaintiff's petition, that her signature to the same was obtained fraudulently and without her knowledge and consent.

"2. The defendant further answering, says that on or about the —— day of February, 1888, she was, and still is, a married woman and the head of a family and was occupying and residing upon the premises described in plaintiff's petition and ever since has resided upon and occupied the same as her homestead, under the laws of the state of Nebraska, and the said premises on the 9th day of February, 1888, were and ever since has been, and still are, the homestead of this answering defendant; and that said premises at that time were, and still are, and ever have been, of less value than $2,000, and of about the value of $500 and no more, and consists of one lot within the corporate limits of the village of New York, in York county, Nebraska, and now a part of the city of York in said county, with a small dwelling house thereon, in which this answering defendant then resided and still resides, as hereinbefore alleged, and said mortgage was not signed, executed, or acknowledged by the husband of this defendant."

It was further pleaded in the answer that on or about the date of the mortgage in suit the son of appellee was held to answer to a criminal charge in the district court of York county, and desired to give a recognizance for his appearance before said court on a certain day, and it was represented to appellee by the attorneys, of whom appellant was one, who had been employed to defend her son, that a note in the sum of $500 and a mortgage on

her real estate must be delivered to the parties to secure them in signing the recognizance as sureties; that she agreed to and did comply with this demand; that about the time of the execution of the note and mortgage she was about sixty-five years old, her eyesight was poor, and she did not have her spectacles, and could not or did not read the papers then signed, but was told that it was a note in the sum of $500, and the mortgage to secure the same, and nothing other, further or different, and that if the $100 note was then signed and included in the mortgage it was without her knowledge and consent, and fraudulently procured to be done; that the case in which the recognizance was given had been disposed of and ended, and she had become entitled to have the mortgage in suit canceled and annuled, for which, as relief, she prayed. The reply, to the extent it referred in direct terms to the portion of the answer in which the mortgaged property was described as the home of the appellee, was as follows: "The defendant admits that the said Amanda Bell, at the time of the execution of the said mortgage deed, and ever since said time, was and has been residing upon the premises described in the petition and in said mortgage deed, and that said premises at that time was and have been of less value than $2,000, and are of the value of $500 or $600 and that the same consists of one lot within the corporate limits of New York, and the same is now a part of the city of York, all in York county, Nebraska, and that the said lot has a small dwelling thereon." There was also stated in the reply that the mortgage had been given to secure the parties in signing the bail bond of appellee's son, and further, that the $100 note evidenced the amount of the fee which was to be paid the attorneys in defense of appellee's son, and that the same was included in the mortgage with the full knowledge and agreement of the appellee. There was also a general denial of all matters alleged in the answer not expressly admitted. There was a hearing, the following being a copy of the journal entry thereat:

"This cause came on this day to be heard on the issues joined and the evidence, and was submitted to the court, on consideration whereof the court finds that the mortgage deed described in the petition executed by the defendant, Amanda M. Bell, to the plaintiff, George B. France, is invalid and ought to be canceled of record. It is therefore considered, and adjudged, and decreed that the mortgage dated February 9, 1888, conveying lot number 2, in block number 25, in the village of New York, York county, Nebraska, executed by Amanda M. Bell to George B. France, and recorded in the office of the county clerk of York county on the 10th day of February, 1888, be, and the same hereby is, canceled of record, and the said mortgage deed is hereby declared null and void. To said finding and order of the court the plaintiff duly excepts, and forty days allowed plaintiff to prepare and file bill of exceptions. Supersedeas bond fixed at the sum of $100.

"This cause coming on for further hearing on the note against John Bell and Amanda Bell, on motion of defendant is continued. To the continuing of said cause plaintiff duly excepts. Plaintiff demands judgment against defendants on the note sued, same denied by the court at this term, and plaintiff duly excepts. Defendants object to the jurisdiction of the court further over this case and asks that the same be dismissed, on consideration whereof the court overrules the same and defendant duly excepts."

It is claimed by appellee that inasmuch as the trial court continued and retained the controversy between the parties in regard to the note, that the decree by which the mortgage was canceled and annulled was not appealable. In section 675 of the Code of Civil Procedure it is provided: "That in all actions in equity either party may appeal from the judgment or decree rendered or final order made by the district court to the supreme court." For a definition of a final order see section 581 of the Code of Civil Procedure. It is clear that the controversy, to the extent it involved the mortgage and any rights of

either party to the action thereunder, was fully and finally adjudicated. The further proceedings in regard to the note, and their final termination, no matter what it might be, could not in any manner or degree affect the decree by which the mortgage was ordered canceled. The suit, in so far as it related to the mortgage, was finally determined and the rights of the parties settled; hence we must hold that the decree was appealable. In the state of Maryland the Code provided: "An appeal shall be allowed from any final decree or order in the nature of a final decree, passed by a court of equity." (Md. Code, art. 5, sec. 20.) In an action by a building and loan association to foreclose a mortgage executed by the defendants it was held: "An order passed in a proceeding to foreclose a mortgage executed by defendants to a building and loan association, which determines that the plaintiff is not entitled to the relief prayed for in its bill, and directs the auditor to state an account, simply as between debtor and creditor, is a final order and is appealable." (*Waverly Land Ass'n. v. Burk*, 1 Cent. Rep. [Md.], 484; 2 Ency. Pl. & Pr., 71; *Forgay v. Conrad*, 6 How. [U. S.], 201; *Ray v. Law*, 3 Cranch [U. S.], 179; *Bronson v. La Crosse & M. R. Co.*, 2 Black [U. S.], 524; *Thomson v. Dean*, 7 Wall. [U. S.], 342; *First Nat. Bank of Cleveland v. Shedd*, 7 Sup. Ct. Rep., 807.)

It is urged that it was recited in the mortgage that the appellee who signed it was an unmarried woman; that, having signed the mortgage containing such a statement, she is estopped by the recital from making the defense that the premises mortgaged were her homestead, involving, as such defense does, the assertion that she was and is a married woman. From the mere fact that she is described in the mortgage as an unmarried woman, she is not estopped to plead and prove, in an action to foreclose the mortgage, that she was a married woman and the mortgage invalid as purporting to convey a homestead and signed by both husband and wife. (*Whitlock v. Gosson*, 35 Neb., 829; *Giles v. Miller*, 36 Neb., 346.) Another

question for consideration in this case is, was the property described in the mortgage her homestead? It was disclosed by the evidence that appellee was a married woman; that about fourteen years prior to the time of the trial she became a resident of this state, removing here from Maquon, Illinois, where she and her husband had been living some twenty-eight years in property which was then their home and which belonged to her. About one week before appellee left Illinois she and her husband ceased to live together, the home was sold and appellee came to York, and with the proceeds of the sale of the Illinois property purchased that in controversy, and which she had occupied as her home during fourteen years. There were several children. Appellee stated in one portion of the evidence: "My two girls are married and I have five boys single." She also said of her children: "When they go away to work and when they get done they come there and stop for a week or so and then go again, and that is their home;" also, that her youngest daughter lived with her two years and one unmarried son "lived there most of the time." That she had been working and partially making her own living, and had been supported in part by the children; that the husband had been in this state three times during the fourteen years, staying "a week or two at a time." He was in York at one time with her at the house for a day or two and had lived at Galesburg, Illinois, in a hotel since she came to this state. The appellee received "letters from him every three or four weeks." In regard to the reason the husband and wife were living separate the following appears. She was asked: "When you came here did you tell him that you were going to leave him?" To which she answered: "No, I never told him. I told him when he quit drinking whiskey we would live together, but I would not live with a man that drank as much whiskey as he did." The main or dominant idea and purpose of the homestead law is to preserve the home not particularly for the benefit of any one member, but the family home for the benefit of

the family and any and all of the persons composing it. The evidence in this case clearly established that this York property was the family home. It is true that as a rule the domicile of the husband is presumed to be that of the wife, and should be; but human nature will not always observe or live according to fixed rules,—it probably cannot,—and we must deal with and adjust the various conditions and situations which arise from the acts of members of humanity as best we may and accomplish the greatest good to the greatest number and justice to all. This man and woman thought they could not, and did not, live together. The wife held and preserved the family home, the husband had practically no other. Our statute allows the title of the homestead to be in either the husband or wife (Compiled Statutes, ch. 36, sec. 2), and it cannot be conveyed or incumbered unless the instrument of conveyance or incumbrance be signed by both the husband and wife. (Compiled Statutes, ch. 36, sec. 4; *Aultman v. Jenkins,* 19 Neb., 209; *Swift v. Dewey,* 20 Neb., 107; *Bonorden v. Kriz,* 13 Neb., 121.) This husband and wife were not living together, but they were not divorced. The facts in this case bring it within the rule announced in the opinion in the case of *Larsen v. Butts,* 22 Neb., 370, wherein a similar question was considered and determined, and it was said: "A contract to convey a homestead, entered into by a wife in her own name, will not be specifically enforced, as the statute requires the instrument of conveyance to be signed and acknowledged by both husband and wife." "The fact that the husband and wife are not living together at the time the contract was made, will not render her contract for the conveyance of the homestead valid." It has been suggested that the husband might claim a homestead, and if allowed and the wife allowed this, then there would be the two. This would be a matter to be shown in evidence and fully under the control of the courts. The evidence in the case at bar shows to the contrary; that the wife was occupying and preserving the family home, and it was within

the doctrine approved by this court to stamp it with the homestead character. (*Larsen v. Butts, supra.*) The judgment of the district court is

AFFIRMED.