PHILAN *v.* TURNER *et al.*

(In Banc.   May 31, 1943.)

[13 So. (2d) 819.   No. 35329.]

**E. C. Fishel,** of Hattiesburg, for appellant.

174

**C. C. Smith,** of Richton, for appellee.

Argued orally by **E. C. Fishel**, for appellant.

**Griffith, J.**, delivered the opinion of the court.

On October 22, 1941, Walter Philan was the owner of the land here in question which theretofore was the homestead of Philan and his wife, Lucile, appellant here. On that day, without the joinder of his wife, Walter Philan conveyed the land to James Turner, his nephew, a boy then about six years old. On, or some few days after, the said date, Walter Philan died intestate, leaving his wife Lucile as his sole heir at law. On January 31, 1942, the appellant, Lucile, filed her bill seeking to have the deed to James Turner cancelled on the asserted ground that at the date thereof the property was the homestead of appellant and her husband, and that therefore the deed without her joinder was void. Her bill was dismissed.

The evidence sufficiently shows that for more than a year before his death Walter Philan had been ill with cancer or with tuberculosis, but as to which of these, or whether both, the record is obscure. He was up and down, as the witnesses express it, but was unable to work, and had no property other than the homestead, of small value. Lucile made the living for both of them by working away from the home, with the result that under that arrangement there was nobody at the home to wait on the sick husband, save such time as upon her return from work the wife could be there, and save such attentions as some of the neighbors, through the good offices of a lodge to which they belonged, would from time to time bestow.

In this situation the husband urged that he be permitted to send for his widowed sister, in order that her small son, appellee James Turner, might wait on the husband while his sister and wife could both work in the making of a living for the combined household. The wife, Lucile, objected to this, and stated that she would get out if the sister came there to live, with the result that the controversy over the proposed arrangement ended by the husband saying to the wife that she could get out and that he was going to send for his sister. The wife left and opened a restaurant which she thence operated, and the sister came, and the little boy waited on the sick husband, who soon thereafter became bedridden, and the sister made the living with the aid of an older son of the sister, and without any assistance or offer of assistance by the wife, so far as the record shows. It was to the boy who waited on him for about eleven months that the husband made the deed, as above stated.

There is some testimony in the record which would tend to show that the reason for which the wife left home was to live with another man, but we will lay this aside, and will consider the case as if the real and immediate cause of the separation and its continuance, looking to the direct proof, was the fact that the husband insisted upon bringing, and did bring, his sister and her six-year-old child into the home. No argument is made and no authorities are cited upon the right of a wife to leave home because of the fact that the husband has brought thereto and to live therein another than an immediate member of the family. Our own investigation has disclosed that line of the authorities such as mentioned in the text, and the cases cited in the notes, in 17 Am. Jur., p. 185, Sec. 70, and the cases annotated in 3 A. L. R. 993, 38 A. L. R. 338, 47 A. L. R. 687, and 76 A. L. R. 985. While the decisions recognize the right of the wife to have a home which is under her own control, none of them seem to justify her in leaving it because of the fact that the husband has brought a relative to live therein, save when the conduct

of the person so installed has become unbearably unpleasant or obnoxious to the wife. There is nothing of that nature shown here, but the fact is that in this case the wife left before the sister-in-law arrived. Moreover, as already mentioned, there was the necessity to bring the relative in this case—a necessity which apparently could not be dealt with otherwise than was done. We conclude that the wife was not justified in leaving the homestead.

Section 1778, Code 1930, so far as material here, reads as follows: "A conveyance, mortgage, deed of trust or other incumbrance upon the homestead exempted from execution shall not be valid or binding unless signed by the wife of the owner if he be married and living with his wife." The clause last quoted, "and living with his wife," is omitted from the statute on the subject in many, if not most, states, and cases from such states are not persuasive here. But the statute has been frequently reviewed by this court, and it has been uniformly held that the sole fact that the wife, for the time being, is living apart from her husband does not neutralize her right of veto upon a conveyance of the homestead. He may not drive her away or otherwise by his own wrong cause her to leave, and thereupon exercise the assumed right to convey the homestead without her joinder in the conveyance, if nevertheless it remained her right and actual intention to return.

Hence it was said fifty years ago in Scott v. Scott, 73 Miss. 575, 579, 19 So. 589, that "so long as the wife has the right and the will to remain at home, she is, . . . to be considered as there living within the meaning of the statute," and this language was reaffirmed in Board of Mayor and Aldermen of Town of Booneville v. Clayton, 155 Miss. 428, 435, 124 So. 490. The will to remain includes, of course, a situation where, being away without her own fault, she has the will to return, that is, the real intention to return; while on the other hand, when she abandons the intention to return, she no longer has the

veto on the homestead conveyance even though, as in the Clayton case, supra, she had the right theretofore to remain.

The question, then, is simply one of fact, and that is (1) did the wife when she left the homestead maturely intend not to return, or (2) if she did then intend to return, did she subsequently maturely abandon that intention? It was no longer a homestead when and after her mature intention is to the effect that she would not return, and we think the evidence in the present case was sufficient to sustain the finding of fact by the chancellor that she did not so intend. The fact that the wife left some of her personal belongings at the home, while a fact to be considered is not at all controlling, for she may have left them there (1) as a matter of convenience to herself, or (2) that they might be there if her sister-in-law should leave, or (3) with the thought that her husband would not long survive, and that by leaving these personal effects her claim of a homestead would be strengthened against any conveyance or mortgage that he might make.

The case chiefly relied on by appellant is Levis-Zukoski Mercantile Co. v. McIntyre, 93 Miss. 806, 47 So. 435. We would call attention to the fact that there is nothing in the recitals of that opinion which showed that the husband was away from the homestead with the mature intention not to return to it, and as we have already stated, this is a necessary element, without which the property retains its character as a homestead. The case when closely examined is, therefore, not in point here.

It may have been the intention of the wife in the case at bar to return to the homestead if and when the sister-in-law moved therefrom, but as we have already mentioned she had no legal justification in leaving her homestead, especially inasmuch as it was necessary that the sister-in-law move therein, and in consequence no right to condition her intention to return upon the removal of the sister-in-law, the necessity aforestated remaining unchanged. The wife well knew that somebody would have

to be with the sick husband constantly to wait on him, as well as to make a living for him, and she well knew that she could not do both. And that she was not actually interested in doing so is attested in an unmistakable way by the fact that although in the same neighborhood she visited her afflicted husband only twice, or perhaps three times, during the more than eleven months between her departure from the homestead and his death.

Affirmed.

**Smith, C. J.,** delivered a specially concurring opinion.

I express no opinion as to the right of the appellant to leave her husband for the reason that he intended to bring his sister and her son into their home, and prefer to rest my opinion on the ground on which the court below decided the case, i.e., that the appellant left, and lived apart from, her husband so that she might be, and have sexual intercourse, with another man, which, on the evidence, was a question of fact for the decision of the court below.

**Anderson, J.,** delivered a dissenting opinion.

The controlling opinion in this case overrules Levis-Zukoski v. McIntyre, 93 Miss. 806, 47 So. 435, 436, although it does not expressly so state. The only difference in the material facts of the two cases is that in the present case the wife left the homestead, and the husband, in whom was the title, remained on it and conveyed it; while in the Zukoski case the husband left the homestead, and the wife, who had the title and remained on it, conveyed it. The evidence of the permanency of the separation was as strong in one case as in the other. The court held that the conveyance of the homestead by the wife, without the signature of the husband, was void.

In the Zukoski case the court used this language: "The homestead right is a favored one in the law, and the courts will not be on the alert to defeat the assertion of

those rights. Whenever there is serious doubt as to whether or not property is or is not a homestead, the doubt should be solved in favor of the exemptionist, sustaining, instead of defeating, the estate, which is created by a sound legal policy.''

The language in section 1778 of the Code of 1930, "married and living with his wife,'' and in section 1780, ''if he be living with his wife,'' as construed by the Zukoski case, simply means as long as they are not divorced, and the owner continues to reside on the homestead; in other words, as long as they are man and wife, and the owner resides on the homestead. The same language was used in sections 2159 and 2161, Code of 1906, under which the Zukoski case was decided.

There is a conflict of authorities on this question; in 26 Am. Jur., p. 96, section 151, the authorities both ways are annotated. As shown by the annotations to Thompson and Randall v. Marlin, 116 Okl. 159, 243 P. 950, 45 A. L. R. 388 (the annotations in point appearing on page 431), the fact that the husband and wife are separated at the time the husband alone mortgages or alienates the homestead does not dispense with the necessity of the wife's consent to the incumbrance or alienation. Carey v. Hart, 208 Ala. 316, 94 So. 298; Mason v. Dierks Lbr. & Coal Co., 94 Ark. 107, 125 S. W. 656, 26 L. R. A. (N. S.), 574; Chambers v. Cox, 23 Kan. 393; Ott v. Sprague, 27 Kan. 620; Sherrid v. Southwick, 43 Mich. 515, 5 N. W. 1027; Liebetreu v. Liebetreu, 197 Mich. 668, 164 N. W. 430; France v. Bell, 52 Neb. 57, 71 N. W. 984. The fact that the wife has abandoned her husband, and is living in adultery, does not give him the power to encumber or alienate the homestead without her consent, as required by statute. Lies v. De Diablar, 12 Cal. 327, 328; Murphy v. Renner, 99 Minn. 348, 109 N. W. 593, 8 L. R. A. (N. S.), 565, 116 Am. St. Rep. 418.

The principle at the bottom of these cases is that the separation may be temporary; that the husband and wife may get back together again, as they sometimes do after

radical differences and separation. That must have been the controlling thought in the Zukoski case. In other words, there is always hope that sooner or later the husband and wife will get back together again; and this hope continues until the divorce takes place; and during the separation, if the one who is the owner of the homestead continues to reside on it, it cannot be encumbered or alienated without the consent of the other.

Take for illustration the following: A farmer has a homestead—no other land. It is well stocked, and has all the other requisites of a good home. He has a wife, and, say, three little children. His wife becomes aggrieved at something which occurs between them. She leaves the home, stating that she never will return again, that the separation is final; and at the time she means what she says. At the end of a week she has changed her mind and comes back home. But in the meantime the husband, believing the separation is final, has sold and conveyed the homestead without the joinder of his wife. The result is, although he has some money, he does not know what to do with it. His life has been devoted to farming—he is trained in nothing else.

It may have been straining, to some extent, for the court to hold that the phrase, "living with his wife," meant as long as they were not divorced. Nevertheless, in my opinion, it was a wise straining, and ought to stand unmodified. Since the Zukoski case was decided several legislatures have convened and adjourned without making any change in these two statutes. That ought to mean something.