751 F.2d 771
 MERCHANTS NATIONAL BANK, VICKSBURG, MS,
Plaintiff-Appellee-Appellant-Cross Appellee,
v.
SOUTHEASTERN FIRE INSURANCE CO., INC. and American Security
Insurance Co., Inc., Defendants-Third Party
Defendants-Appellees-Cross Appellants,
v.
The BOSSIER CITY BANK & TRUST CO., Defendant-Third Party
Plaintiff-Appellant.
John BARLOW, Plaintiff-Appellee-Appellant,
v.
AMERICAN SECURITY INSURANCE CO., Defendant-Third Party
Defendant-Appellee,
v.
The BOSSIER CITY BANK & TRUST CO., Defendant-Third Party
Plaintiff-Appellant,
v.
Edna Earl BARLOW, Defendant-Third Party Plaintiff
Appellee-Appellant.
VICKSBURG SMALL BUSINESS INVESTMENT CO., Plaintiff-Appellee,
v.
AMERICAN SECURITY INSURANCE CO., et al., Defendants-Third
Party-Defendants,
v.
The BOSSIER CITY BANK & TRUST CO., Defendant-Third Party
Plaintiff-Appellant.
 No. 83-4381.
 United States Court of Appeals,
Fifth Circuit.
 Jan. 28, 1985.
 
 Keyes, Moss & Piazza, Donald C. Woods, Ben J. Piazza, Jr., Jackson, Miss., for Bossier Bank.
 Ward, Martin, Terry, King & Sorey, Edley H. Jones, III, Vicksburg, Miss., for Merchants Nat. Bank.
 Bodron & Yoste, Harry M. Yoste, Jr., Vicksburg, Miss., for John and Edna Barlow.
 Varner, Parker & Sessums, R.E. Parker, Jr., Davis M. Sessums, Vicksburg, Miss., Watkins & Eager, James L. Carroll, Jackson, Miss., for S.E. Fire & American Sec.
 Appeals from the United States District Court for the Southern District of Mississippi.
 Before WISDOM, RANDALL and JOLLY, Circuit Judges.
 E. GRADY JOLLY, Circuit Judge:
 
 
 1
 This diversity action was brought when the defendant insurers refused to pay claims on a casualty policy to the owner and mortgagees of a house destroyed by fire. The plaintiff John Barlow (Barlow) had purchased a casualty insurance policy on his home from American Security Insurance Company (American). He listed as mortgagees on the policy Merchants National Bank (Merchants), Bossier Bank and Trust Company (Bossier), and Vicksburg Small Business Investment Company (VSBIC), but excluded another mortgagee, Edna Earl Barlow, his mother. After the home was later destroyed by fire, Barlow and all mortgagees sought payment under the policy. American and Southeastern Fire Insurance Company (Southeastern), to which the policy had been "bordereauxed," refused payment. Barlow brought suit in state court against American and all mortgagees of the property, demanding payment under the policy. Edna Barlow and Bossier cross-claimed against American to recover their share of the insurance proceeds. Merchants and VSBIC, also seeking payment, each brought separate suits against Southeastern and American. The cases were later removed to federal district court where all actions were consolidated for trial. The district court directed a verdict against John Barlow, Bossier and Edna Barlow. The jury returned a verdict in favor of Merchants and VSBIC; nevertheless, Merchants is unhappy because the district court refused to submit a punitive damage instruction to the jury. John Barlow, Merchants, Bossier and Edna Barlow all appeal. We reverse and remand.
 
 I.
 
 2
 John N. Barlow and his former wife Sandra Barlow owned a house as joint tenants in Bovina, a small town in Warren County, Mississippi. On July 6, 1978 they both executed a deed of trust on the house to Merchants National Bank to secure a promissory note for $37,500. On January 5, 1978 they executed another deed of trust, this time to the Vicksburg Small Business Investment Corporation. Later Barlow sought still another loan, this time from the Bossier Bank & Trust Company. To obtain the loan from Bossier, Barlow executed a deed of trust, but forged his wife's name on the document. The forgery took place on July 30, 1980, and the deed of trust securing the promissory note of $41,000 was executed on August 13, 1980. Finally, on August 12, 1980, Barlow executed a fourth deed of trust on the property. This deed of trust was to his mother, Edna Earl Barlow, for the stated purpose of securing previous loans from her totalling $48,000. Barlow stopped making payments to Merchants and VSBIC in August 1980. He made no payments to Bossier or Edna Barlow.
 
 
 3
 On December 14, 1981, Barlow purchased from the defendant, American Security Insurance Company, a $245,000.00 casualty insurance policy on the house and contents. Barlow was under indictment for the forgery of the deed of trust to Bossier when the policy was purchased. Merchants, Bossier, VSBIC, and Margaret C. Weems[1] were listed as loss-payees on the policy, but Edna Barlow's name was omitted. Barlow contends that he requested American to place her name on the policy but it failed to do so.
 
 
 4
 Sometime after the issuance of the policy Barlow was convicted of forgery and served time in the Mississippi state penitentiary. On March 26, 1982, while Barlow was still in prison, his house was totally destroyed by fire. Soon afterward, Barlow and the beneficiaries of the policy took action to obtain payment for their loss. Barlow filed a proof of loss and submitted to a deposition under oath by American, but was never paid. Edna Barlow gave a deposition under oath concerning her lien and claim against the policy, but American also never paid her. Merchants tried to establish its right to payment through its vice president, John Byram, who wrote a letter to American on April 2, 1982 stating that Merchants was the first mortgagee on the property. He advised American of the principal and interest due Merchants, and requested that it contact Barlow if further information was needed. After twenty days passed with no response, Merchants again wrote to American demanding payment. American responded by letter, stating that the policy had been "bordereauxed" to Southeastern Fire Insurance Company. Southeastern later contacted Merchants and requested a sworn statement by Byram. Byram provided the sworn statement, but Southeastern provided the proof of loss form only after repeated demands by Merchants. Although Merchants returned the completed proof of loss statement, Southeastern did not pay its claim or request any additional information. A representative of Bossier also gave American a deposition under oath relative to its lien and claim against the policy, but American failed to pay its claim and did not request further information.
 
 
 5
 Barlow filed suit in Warren County Circuit Court against American to recover under the policy, naming as additional defendants Edna Barlow, Merchants, VSBIC and Bossier because of their interests in the property. Bossier and Edna Barlow cross-claimed against American for failure to pay under the policy. Separate suits, also in state court, were brought by Merchants and VSBIC against both Southeastern and American for failure to pay under the policy and for punitive damages. In a later amended complaint Merchants requested punitive damages for the negligent investigation of its claim. American and Southeastern removed the suits to federal district court and all of the actions were consolidated at trial. The district court directed a verdict against Bossier and John and Edna Barlow and denied Merchants's request for an instruction on punitive damages. The jury returned a verdict for Merchants and VSBIC on their loss claims. John and Edna Barlow, along with Merchants and Bossier, appeal.
 
 II.
 
 6
 A number of issues have been raised here and in the district court. Some issues have been abandoned by the parties. Some are without substantial merit, not requiring our attention. We address only those issues that have merit and affect the outcome of this appeal. Because of the number of issues and parties involved, we will address each issue as it applies to each particular appellant.
 
 III.
 
 7
 * (1)
 
 
 8
 We begin by addressing the issues raised by Merchants. It contends that American had no legitimate or arguable reason to deny its claim, and that the district court therefore erred in refusing to submit a punitive damage instruction to the jury.[2] Because we are bound by Erie to apply the law of the forum state to this diversity action, we look to the substantive law of Mississippi for resolution of this issue.
 
 
 9
 The Mississippi Supreme Court has recently recognized the confusion in its precedent as to when a punitive damage instruction should be granted in a bad-faith case. Reserve Life Insurance Co. v. McGee, 444 So.2d 803, 809-10 (Miss.1983). In Reserve, the court sought to resolve this problem by setting forth a three-part test. Initially, the trial court should examine whether as a matter of law the insurer has a legitimate or arguable reason to deny the claim. Should the court find that there is a legitimate or arguable reason for the denial, a punitive damage instruction should not be given; if, however, reasonable minds could differ as to whether there is a legitimate or arguable reason, the court must next consider whether there is evidence of gross negligence or intentional misconduct in the denial of the claim. Id. at 809-10.[3] If there is sufficient evidence to indicate that the insurer had no legitimate or arguable reason to deny the claim and that the insurer acted intentionally or was grossly negligent, a punitive damage instruction should be granted.
 
 
 10
 Here, the district court did not make its decision by applying the Reserve test but rather denied the instruction because it believed such instructions could only be given when expressly authorized by Congress or a state legislature. The district court erred in this regard.
 
 
 11
 American argues that it had a legitimate or arguable reason to deny the claim, and thus the trial court properly refused to grant the punitive damage instruction, albeit on erroneous grounds. It contends that Merchants withheld material information concerning John Barlow, thus violating the terms of the policy and state law.[4] Specifically, it argues that Merchants knew, and did not disclose, that Barlow was behind in his mortgage payments and was in poor financial condition; that he was the subject of official criminal investigations; that he was incarcerated in the state penitentiary; and that his house was vacant. Further, American asserts that Merchants failed to disclose its collaboration with other lien holders under a "gentlemen's agreement" to foreclose Barlow's house. American argues that all of the foregoing undisclosed facts increased the moral hazard on the insured property, thus supplying a legitimate or arguable reason not to pay.
 
 
 12
 Merchants concedes its failure to disclose, but contends that American already knew the undisclosed facts, and therefore the failure to disclose could not serve as a legitimate or arguable reason to deny its claim. Furthermore, Merchants contends that because American failed to properly investigate the claim, it could not have made its decision to deny payment in good faith. Merchants specifically notes that American's investigator did not interview either of American's issuing agents before denying payment, and had he done so, he would have discovered the non-disclosed information. In sum, Merchants argues that American's wrongful denial of payment and gross negligence in investigating its claim entitles it to a punitive damage instruction.[5]
 
 
 13
 (2)
 
 
 14
 Since Merchants admits that it did not notify American of an increase of hazard, we are called upon to determine whether it was reasonable for American to deny payment on that basis. The Mississippi Supreme Court, we are thankful to say, has made our decision on this point much easier.
 
 
 15
 Weems v. American Security Insurance Co., 450 So.2d 431, 433-34 (Miss.1984), involved the same facts we consider today. In that case, Margaret C. Weems, Barlow's ex-mother-in-law, sought payment as a mortgagee under the same policy from American Security Insurance Company that is the subject of this appeal. American, relying upon section 83-13-9, denied payment because Weems failed to notify it of essentially the same facts that Merchants did not disclose. Id. at 433. In determining whether American could deny payment, the court held that a breach of the duty to notify an insurer occurs only when there has been a substantial "change" in occupancy or "increase" of hazard occurring after the effective date of coverage. Id. at 436 (emphasis in original). The court expressly found that Barlow was deeply in debt and under indictment for forgery at the time of the issuance of the policy. If further found that the vacancy of the house did not increase the hazard since American had knowledge of the vacancy within twenty-four hours after it occurred. Weems' failure to notify American of these facts, the court concluded, did not proximately cause or contribute to any loss suffered by American. Id. at 436-37.
 
 
 16
 Although the Weems decision forecloses, as a matter of decided Mississippi law, all of the defenses to payment of the claim that American asserts in this case, it does not necessarily stand for the proposition that American had no legitimate or arguable reason to deny payment at the time Merchants' filed its claim. The Weems decision, although instructive, does not, therefore, resolve the question whether a punitive damage instruction should be given in this case. We must apply the Reserve test to make that determination.
 
 
 17
 In applying that test to these facts we note that American had actual knowledge of Barlow's financial problems and criminal activities at the time of or shortly after the issuance of the policy, yet it denied payment because of the non-disclosure of that information. Furthermore, when there is evidence, as in this case, that the insurer negligently failed to conduct a proper investigation that would easily adduce evidence showing its defenses to be without merit, the insurer's adherence to the meritless position is not likely to be a "legitimate or arguable" reason to deny payment. We therefore hold that if the district court had applied the proper test, it could not have determined, as a matter of law, that American had a legitimate or arguable reason to deny payment and that there was no evidence of an intentional or grossly negligent act. The district court thus erred in not submitting a punitive damage instruction to the jury. On remand, the district court will grant a new trial to determine punitive damages and instruct the jury that it may assess such damages against American if it believes that there was no legitimate or arguable reason to deny payment and it further believes that the denial was intentional or grossly negligent.
 
 B
 
 18
 (1)
 
 
 19
 Bossier contends that the district court erred in directing a verdict against it on the basis that the mortgaged property, Barlow's homestead, could be encumbered only with the consent of both spouses. The court reasoned that because Barlow had forged his wife's name to the deed of trust executed to Bossier, it was void, and thus Bossier was not a valid mortgagee under the policy. Bossier, admitting that the signature of Sandra Barlow was a forgery, argues that because she was not living with Barlow when the deed was executed, the homestead statute does not apply to invalidate the encumbrance.
 
 
 20
 Mississippi's homestead statute provides that "[a] conveyance, mortgage, deed of trust or other encumbrance upon a homestead exempted from execution shall not be valid or binding unless signed by the spouse if the owner be married and living with the spouse." Miss.Code Ann. Sec. 89-1-29 (Supp.1983) (emphasis added). The requirement that the owner be living with the spouse is essential in determining whether encumbered property is homestead. See Hendry v. Hendry, 300 So.2d 147, 149 (Miss.1974); Philan v. Turner, 195 Miss. 172, 13 So.2d 819, 821 (1943). When a husband removes himself from homestead property without any intent to return and his wife consents, the homestead is abandoned, notwithstanding the wife's continued residence on the land. Lewis v. Ladner, 177 Miss. 473, 172 So. 312, 313-14 (1937). Moreover, the question whether an owner of property is living with a spouse is factual. See Philan, 195 Miss. 172, 13 So.2d 818, 821 (1943). If, in fact, the Barlow's homestead had been abandoned when the deed of trust was executed, the encumbrance would be effective as to Barlow's portion of the property. See Ayers v. Petro, 417 So.2d 912, 913 (Miss.1982) (joint tenant's conveyance is effective as to his interest).
 
 
 21
 It is in the light of these Mississippi cases, that we must consider the propriety of the directed verdict against Bossier by applying our well-established standard of review set forth in Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir.1969). There was evidence at trial that Barlow and his wife separated in October 1979, and in May 1980, after completing property settlement negotiations in contemplation of divorce, they agreed that Barlow would have exclusive use and possession of the property. In viewing this evidence in the light most favorable to Bossier, we find that reasonable minds could have believed that Barlow and his wife had abandoned their homestead when the deed of trust was executed. Because of the directed verdict, American had no opportunity to present its evidence concerning whether the homestead was abandoned. A new trial is therefore necessary to allow the jury to consider all of the evidence and to determine whether the homestead had in fact been abandoned. If it is determined that it was abandoned, the mortgage is valid as to John Barlow's interest in the property.
 
 
 22
 (2)
 
 
 23
 American argues that irrespective of whether the homestead was abandoned, Bossier failed to disclose certain material information concerning changes in condition or increase of hazard thereby relieving it of its duty to pay. We disagree. All of the undisclosed information concerned Barlow's financial and criminal problems, which Weems foreclosed as a reason for denying payment. American may not therefore escape liability under the policy by asserting that Bossier failed to disclose information relating to changes in condition or increase of hazard.
 
 
 24
 (3)
 
 
 25
 In summary, we hold that the district court erred in directing a verdict against Bossier. We therefore reverse the district court and remand for determination whether the Barlows abandoned their homestead. If the jury finds there was no abandonment, judgment should be entered for American. If the jury finds the homestead was in fact abandoned, it should also determine whether American is liable to Bossier under the policy. Since the facts relevant to Bossier's dealings with American were not fully developed at trial, we do not decide whether Bossier, like Merchants, is entitled to a punitive damage instruction. The district court should consider the evidence and make that determination by applying the test set forth in Reserve.
 
 C.
 
 26
 On motion of American, the district court directed a verdict against John Barlow. American asserted three bases for its motion: (1) Barlow failed to establish a prima facie case, (2) he failed to prove the actual cash value of the loss, and (3) he concealed and misrepresented certain material matters in the sworn statement he gave to American, which violated the "concealment clause" of the policy, thereby rendering the policy void. On this appeal American chose to defend its position only on the third basis, apparently conceding that the first two are without merit. Because the first two contentions are indeed without merit, we address only the third.
 
 
 27
 Shortly after the fire, American took Barlow's deposition while he was incarcerated in the state penitentiary. Barlow declined to answer several of the questions posed to him. The deposition lasted two hours and covered seventy-seven transcribed pages. Barlow, without counsel at the time, refused to answer questions principally related to his financial condition and to his personal property destroyed by the fire. Specifically, he refused to:
 
 
 28
 (1) name who, with the exception of his mother, helped him prepare the list of personal property destroyed by the fire;
 
 
 29
 (2) tell which items of personal property he had purchased within six months of the fire;
 
 
 30
 (3) reveal who had given him a lounge chair, liquor cabinet, AM/FM radio, and a gold chain;
 
 
 31
 (4) reveal the sources of his income at the time the fire occurred;
 
 
 32
 (5) discuss his personal financial condition on the date of the fire;(6) reveal what persons he had connections with at Bossier when he received a loan from it; and
 
 
 33
 (7) reveal what his monthly income was prior to his incarceration at the penitentiary.
 
 
 34
 In Watkins v. Continental Insurance Co., 690 F.2d 449, 451-52 (5th Cir.1982), we set forth the elements that an insurer must prove under Mississippi law to invoke the concealment clause of an insurance policy: the statements of the insured concerning his claim must be false and material and knowingly and willingly made. Here, Barlow admits that he intentionally refused to disclose certain information, but argues that the concealed facts were not material because American already possessed the requested information. The materiality of the non-disclosed information is thus the dispositive issue because a refusal to answer material questions will defeat recovery on the policy. Edmiston v. Schellenger, 343 So.2d 465, 467 (Miss.1977); Taylor v. Fireman's Fund Insurance Co., 306 So.2d 638, 644-45 (Miss.1975).
 
 
 35
 In determining whether the information that American requested was material, we note that an explicit and workable definition of "materiality within the concealment clause context" has not emerged from the Mississippi cases; but it is certain that Mississippi courts take a broad view of materiality. Watkins, 690 F.2d at 451-52 n. 3; Edmiston, 343 So.2d at 466. The purpose of requiring answers to an insurer's material questions, of course, is to enable the insurer to decide upon its obligations and to protect against false claims. Id. at 466-67; Standard Insurance Co. v. Anderson, 227 Miss. 397, 407, 86 So.2d 298, 301-02 (1956). We must therefore determine whether the information sought from Barlow was necessary to serve that purpose. We hold that the questions concerning Barlow's financial condition (numbers 4, 5, 6, and 7 above) are not material because American was well aware of that condition prior to or at the time of the deposition. Indeed, the Weems court has already determined that American was fully informed of Barlow's financial condition.
 
 
 36
 Questions one, two and three, supra, however, are clearly material because they relate to the value of Barlow's personal property lost in the fire. That information certainly was necessary for American to determine its liability concerning Barlow's personal property loss and to protect it against false claims. Edmiston, 343 So.2d at 466. In applying the Boeing standard for reviewing directed verdicts, we find that reasonable minds could not differ concerning whether Barlow withheld material information concerning the value of his personal property. The district court therefore did not err in granting a directed verdict in this regard. Our inquiry, however, does not stop there. Under Mississippi law, standard schedule insurance on real estate and contents is considered to consist of two coverages even though contained in a single policy in which a single premium is paid. Travelers Indemnity Co. v. Wetherbee, 368 So.2d 829, 835 (Miss.1979); Claxton v. Fidelity & Guaranty Fire Corp., 179 Miss. 556, 175 So. 210, 213 (1937). Since the coverage on the realty and personalty is divisible, American cannot withhold coverage on the realty based solely upon concealment of facts or misrepresentations concerning the personalty. Travelers, 368 So.2d at 835; Claxton, 179 Miss. 556, 175 So. at 213. We hold, therefore, that Barlow's concealment of material information voided only the coverage of personalty under the policy. The district court erred in directing a verdict against Barlow. On remand, Barlow may not recover the value of his personalty under the policy, because that coverage is voided. He is entitled, however, to a new trial on the merits concerning his claim under the realty coverage of the policy.
 
 D.
 
 37
 The district court also granted a directed verdict against Edna Barlow. At trial, American contended that because Edna was not listed as a mortgagee on the policy, she could not recover under it. Edna argues that Mississippi law allows her to recover under the policy notwithstanding that she was not listed as a loss-payee.
 
 
 38
 To aid us in resolving this issue, we turn to two relevant Mississippi statutes. Miss.Code Ann. Sec. 83-13-7 (1972) provides:
 
 
 39
 When, by an agreement with the assured or by the terms of a fire insurance policy taken out by a mortgagor, the whole or any part of the loss thereon is payable to the mortgagee or mortgagees of the property for their benefit, the company shall, upon satisfactory proof of the rights and title of the parties, in accordance with such terms and agreement, pay all mortgagees protected by such policy in the order of their priority of claim, as their claims shall appear, not beyond the amount of which the company is liable.
 
 
 40
 Miss.Code Ann Sec. 83-13-9 (1972) provides:
 
 
 41
 Each fire insurance policy on buildings taken out by a mortgagor or grantor in a deed of trust shall have attached or shall contain substantially the following mortgagee clause, viz:
 
 
 42
 Loss or damage, if any, under this policy, shall be payable to (here insert the name of the party), as --- mortgagee (or trustee), as --- interest may appear, and this insurance as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property....
 
 
 43
 In Employers Mutual Casualty Co. v. Standard Drug Co., 234 So.2d 330 (Miss.1970), the Mississippi Supreme Court construed these two statutes on facts similar to those here. A property owner executed deeds of trust on a single piece of property to two different lenders. Subsequently, the property owner purchased two casualty insurance policies on the property but failed to list the second mortgagee, Standard Drug Company. The building later was destroyed by fire and Standard sought to recover under the policies by timely notification of the insurance companies. The companies, however, paid the first mortgagee and remitted the balance to the property owner. Standard brought suit to recover under the policy and the trial court held that it was entitled to receive its appropriate share of the proceeds. On appeal the issue was whether the absence of a mortgage clause in favor of Standard barred recovery. The court held that Standard was entitled to payment under the policy despite the absence of a mortgage clause in its favor. Id. at 330-31.[6]
 
 
 44
 The Employers court cited Lititz Mutual Insurance Co. v. Miller, 210 Miss. 548, 50 So.2d 221 (1951) as support for its decision. In Lititz, the Mississippi Supreme Court stated: "The law will presume that insurance taken out by a mortgagor in his name, after an agreement by him with the mortgagee to insure for the mortgagee's benefit was taken out to fulfill that agreement ...." 210 Miss. at 556-57, 50 So.2d at 225-26. Here John Barlow, in the deed of trust, agreed with Edna that he would insure the property covered by her deed of trust. Since it is presumed that the insurance was taken out by Barlow to fulfill that agreement, Edna may, upon satisfactory proof that she has a valid mortgage, be entitled to an equitable lien on the policy in accordance with her priority even though she was not listed as a mortgagee. See Employers, 234 So.2d at 333; Lititz, 210 Miss. at 556-57, 50 So.2d at 225-26; Miss.Code Ann. Sec. 83-13-9 (1972). The district court erred in directing a verdict simply because her name did not appear on the policy. On remand Edna Barlow will be entitled to a new trial to allow her the opportunity to establish her claim under the policy.
 
 IV.
 
 45
 In conclusion, we hold that there was a factual dispute whether American had a legitimate or arguable reason to deny payment of Merchants' claim and whether it acted intentionally or was grossly negligent in denying payment. The district court therefore erred in refusing to grant Merchants' requested punitive damage instruction. Merchants, on remand, is entitled to a new trial on punitive damages. The district court will, at the close of trial, submit only the punitive damage issue to the jury. The actual damage award in the first trial will not be disturbed.
 
 
 46
 The district court also erred in directing a verdict against Bossier. There is a factual dispute concerning whether the Barlows abandoned their homestead prior to the execution of the deed of trust to Bossier. On remand, the jury will be instructed to consider whether the Barlows had abandoned their homestead, and, if so, whether Bossier is entitled to recover under the policy.
 
 
 47
 The district court erred in directing a verdict against Edna Barlow. Her interest in the policy is not barred by the absence of her name as a mortgagee on the policy. On remand, she will be entitled to a new trial to determine whether she may recover under the policy. Finally, the district court also erred in directing a verdict against John Barlow. Although Barlow concealed material information concerning personalty lost in the fire, his claim under the realty coverage of the policy is not barred. On remand, he will be entitled to a new trial on his claim under the realty coverage.
 
 
 48
 Upon retrial, we respectfully suggest that verdict by special interrogatories will aid the jury, the district court, and ultimately this court in separating the distinct claims presented by the various parties. The case is remanded for further proceedings not inconsistent with this opinion.
 
 
 49
 REVERSED AND REMANDED.
 
 
 
 [1]
 Margaret C. Weems is the ex-mother-in-law of John Barlow. She failed to receive payment on her claim against American and brought a separate action in state court. See Weems v. American Security Insurance Co., 450 So.2d 431 (Miss.1984)
 
 
 [2]
 Although both American and Southeastern were parties before the district court, for simplicity we refer to American as the appellee for purposes of this appeal, since it originally issued the insurance policy
 
 
 [3]
 This additional requirement (that "the trial court ... should make a determination as to whether or not the evidence is sufficient to submit a punitive damage instruction to the jury under the guidelines set out in Veal"), we believe, would often be superfluous since an insurer's failure to pay a claim without an arguable reason is usually tantamount to a wilful or grossly negligent refusal to pay. See Richards v. Allstate Insurance Co., 693 F.2d 502, 504-05 (5th Cir.1982) (applying Mississippi law); Black v. Fidelity & Guaranty Insurance Underwriters, Inc., 582 F.2d 984, 990 (5th Cir.1978) (applying Mississippi law). We recognize, however, that there may be cases in which a distinction between the two standards is present
 
 
 [4]
 Mississippi law provides: "The mortgagee (or trustee) shall notify [the insurer] of any change in ownership or occupancy or increase of hazard which shall come to the knowledge of [the] mortgagee (or trustee) and, unless permitted by [the] policy, it shall be noted thereon and the mortgagee (or trustee) shall, on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise [the] policy shall be null and void." Miss.Code Ann. Sec. 83-13-9 (1972). The casualty policy issued by American contained a mortgage clause as required by section 83-13-9
 
 
 [5]
 Merchants' request for punitive damages for negligent investigation of its claim is intertwined with its assertion that American had no arguable reason to deny payment. We therefore need not consider whether punitive damages are appropriate solely for negligent investigation of the claim. The evidence of American's negligent investigation, however, is relevant in determining whether American acted wilfully or with gross negligence and without arguable reason when denying the claim. This evidence thus should be considered by the jury in determining whether to award punitive damages
 
 
 [6]
 From the face of these statutes it seems clear that a mortgagee need not have been listed as a payee on the policy to be protected by the policy and to be entitled to recover for losses under it. What is required is an agreement between the mortgagor and the mortgagee that the encumbered property be insured. A further requirement is that the mortgagee must establish a valid interest in the property. In this case Edna Barlow would have to prove both an agreement with John Barlow to be covered under an insurance policy and that the mortgage was a valid security; e.g., that here it secured a valid debt
 Furthermore, and consistent with what we have said thus far, we do not read section 83-13-9 as requiring the mortgagee to be listed as a condition to claiming the benefits of the insurance policy when the mortgagor neglects to place his name on the policy. It does seem, however, that section 83-13-9 may be read to provide that unlisted mortgagees stand in the shoes of the mortgagor. In this case, the phrase "this insurance as to the interest of the mortgagee (or trustee) only therein," may mean that Edna's recovery under the policy is tied to the rights of John Barlow. We specifically note, however, that this particular question of statutory interpretation is not before us and has not been briefed or argued, and consequently our comment is, at best, dicta.