CABELL ELECTRIC
COMPANY, Plaintiff,

v.

PACIFIC INSURANCE
COMPANY, Defendant.

Civ. A. No. J84–0014(L).

United States District Court,
S.D. Mississippi,
Jackson Division.

Jan. 8, 1987.

William H. Cox, Jr., James L. Carroll, Watkins & Eager, Jackson, Miss., for plaintiff.

John E. Hughes, III and Kenna L. Mansfield, Jr., Wells, Wells, Marble & Hurst, Jackson, Miss., for defendant.

## MEMORANDUM OPINION
## AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of the defendant, Pacific Insurance Company (Pacific), for judgment notwithstanding the verdict on the issue of punitive damages and for new trial on contractual liability, and the motion of the plaintiff, Cabell Electric Company (Cabell), for prejudgment interest on the award of compensatory damages. Each party filed timely response to the motion of the other. The court, having reviewed the memoranda of the parties together with pertinent parts of the record, is of the opinion that Pacific's motion with reference to a judgment notwithstanding the verdict should be granted but should be denied with reference to a new trial on contractual damages and that Cabell's motion for prejudgment interest should be denied.

Cabell purchased from Pacific an insurance policy which covered loss of gross earnings resulting from business interruption caused by damage to or destruction of real or personal property by flood. Cabell's business premises were flooded from May 22, 1983 until May 27, 1983, with a consequent interruption of Cabell's business. Cabell subsequently filed a claim for loss of gross earnings resulting from the business interruption. Pacific hired an independent adjuster to investigate the claim and make recommendations. He gathered pertinent information about the business interruption and about Cabell's prior earnings history and submitted the information to Pacific with a recommendation that the claim be paid. Pacific denied the claim on the basis that the information supplied by its adjuster indicated that there had been no loss of gross earnings. Further correspondence between the parties failed to produce a reversal of Pacific's decision to deny the claim, and Cabell filed suit in state court. Pacific removed the action to this court. The cause came on for trial and

judgment was entered pursuant to a jury verdict awarding Cabell $44,750.18 actual damages and $40,000.00 punitive damages, following which the motions at bar were timely filed.

## PUNITIVE DAMAGES

■ Under Mississippi law, punitive damages may be awarded for denial of a legitimate contractual claim attended by an intentional wrong or such gross negligence as to amount to an independent tort. *Vogel v. American Warranty Home Service Corp.*, 695 F.2d 877, 883 (5th Cir.1983); *Standard Life Insurance Co. of Indiana v. Veal*, 354 So.2d 239, 247 (Miss.1978). In order for punitive damages properly to be awarded for "bad faith" refusal to pay an insurance claim, there must be both (1) the absence of a legitimate or arguable reason to deny the claim and (2) malicious conduct, gross negligence or reckless disregard of the rights of others. *Merchants National Bank v. Southeastern Fire Insurance Co.*, 751 F.2d 771, 775 (5th Cir.1985); *Aetna Casualty & Surety Co. v. Day*, 487 So.2d 830, 832 (Miss.1986); *Blue Cross & Blue Shield of Mississippi v. Campbell*, 466 So.2d 833, 843–44 (Miss.1984); *Reserve Life Insurance Co. v. McGee*, 444 So.2d 803, 809 (Miss.1983).

The procedure in federal court for determining whether the issue of punitive damages should be submitted to the jury was set forth in *Merchants National Bank v. Southeastern Fire Insurance Co.*, 751 F.2d 771 (5th Cir.1985):

> Initially, the trial court should examine whether as a matter of law the insurer has a legitimate or arguable reason to deny the claim. Should the court find that there is a legitimate or arguable reason for the denial, a punitive damages instruction should not be given; if, however, reasonable minds could differ as to whether there is a legitimate or arguable reason, the court must next consider whether there is evidence of gross negligence or intentional misconduct in the denial of the claim [citation omitted].[1] If there is sufficient evidence to indicate that the insurer had no legitimate or arguable reason to deny the claim and that the insurer acted intentionally or was grossly negligent, a punitive damage instruction should be granted.

*Merchants*, 751 F.2d at 775. The standard for determining the sufficiency of the evidence was set forth in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc):

> On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.

*Boeing*, 411 F.2d at 374–75.

The issue in this case boils down to whether, given the possible interpretations of Cabell's sales figures, a reasonable

---

1. The court noted that this additional determination of whether there is evidence of gross negligence or intentional misconduct would often be superfluous since an insurer's failure to pay a claim without an arguable reason is usually tantamount to a willful or grossly negligent denial, although there might be cases where there is a distinction between the two standards. *Merchants*, 751 F.2d at 775; *see also Vogel*, 695 F.2d at 883 (if no arguable reason for denial, trial court must submit punitive damages issue to jury).

hypothetical jury could find that Pacific, in interpreting the figures not to show a loss of earnings, acted without an arguable basis. Among the facts Pacific had before it in deciding whether or not to pay the claim were the following:

1. Cabell's sales figures show that total sales for 1983 through July, excluding May and June, the months in which the business interruption occurred, were approximately fifteen percent higher than for the comparable period in 1982.

2. Cabell's sales for June 1983 were approximately sixty-five percent higher than for June 1982. Excluding direct shipments for those months, as Cabell requested, the increase was still approximately twenty-nine percent.

3. Comparison of Cabell's sales for July 1983 with July 1982, with inclusion of direct shipments, shows an increase for July 1983 of about twenty-seven percent; without direct shipments, the increase is about twenty-one percent.

4. Cabell's total sales for May and June of 1983 exceed projections based on applying the fifteen percent figure to sales for May and June of 1982. If direct shipments are omitted, the actual sales for May and June are less than would be expected based on the fifteen percent projection; however, the loss of earnings reflected by that shortfall is less than the policy deductible.

5. Cabell and Fordham, the independent adjuster hired by Pacific, utilized a different method for computing the May loss from that used to calculate the loss of sales for June. For calculating the loss of sales for May, Cabell projected what the sales for the period of interruption would have been based on what the sales were for the part of May preceding the flood. In figuring the June loss, Cabell used a figure of ten percent of total sales excluding direct shipments.

6. Cabell's calculation of a loss for May did not take into account the possibility that sales were made in May during the flood period but not recorded on the company's books until June, when Cabell was able to reoccupy its business premises, and the possibility that some sales which, without the flood, would have been made in May were merely deferred or postponed until June. Either or both of these possibilities were reasonable assumptions given the extraordinarily large volume of sales recorded in June.

7. The ten percent figure utilized by Cabell to compute its claimed loss for June was simply an arbitrary figure. Fordham's report states that Cabell initially proposed to use the figure of twenty percent, while Fordham counterproposed five percent. The two finally agreed to use ten percent. The use of this arbitrary figure was based on an assumption that the interruption caused by the flood of necessity had resulted in some loss of sales and that ten percent was a reasonable estimate. When asked, Cabell was unable to supply any records that would support a projection for sales in excess of what was actually achieved.

8. Only a minute part of Cabell's sales were "walk-in" sales at its business premises.

9. Pacific was not informed during its investigation, and no testimony was presented at trial, of a single incident of a potential buyer being unable to make a purchase from Cabell during the interruption period and making that purchase from another electrical wholesaler.

Cabell cites the following in support of its contention that a jury issue on punitive damages was created:

1. It was several weeks after the flood before activity at Cabell's business premises completely returned to normal.

2. Cabell had only two telephone lines at its temporary business headquarters, as opposed to the seven it maintained at its place of business.

3. Fordham was of the opinion that Cabell had incurred a loss payable under the policy and recommended that Pacific pay the claim. Pacific rejected this recommendation and denied the claim.

4. Cantrell, a staff accountant of the adjustment firm hired by Pacific, reviewed the calculations made by Cabell and the

adjuster and "the accounting ... was found to be in order."

5. Pacific ordered Fordham to close his file and did not send another adjuster to investigate the claim.

6. Pacific did not verify its calculations with an independent accountant, or seek the advice of counsel, before denying the claim.

■ Since Fordham was an independent adjuster, Pacific had no obligation to accept his recommendation. With regard to the opinion of Cantrell, the statement appears to have been taken out of context and does not necessarily indicate that Cantrell agreed with Fordham's opinion that Cabell had sustained a loss payable under the policy. A notation in Pacific's claim file, dated August 16, 1983 (p. 135 of exhibit D–23), contains the statement, "Cantrell finds it hard to accept a loss of sales in June." The court further notes that at the time Fordham was instructed to close his file, he had collected all the information Cabell had to offer. Therefore, there was no need to hire a second adjuster.

■ In regard to Pacific's failure to consult with an independent accountant before denying the claim, the evidence was undisputed that Drobinski and Welton of Pacific were experienced in handling this type of claim. It was uncontroverted, further, that Pacific's method of computation complied with recognized accounting principles. Since this was a mathematical rather than a legal question, Pacific was not culpable for failing to consult an attorney.

■ Cabell's position that there was a loss of gross earnings in excess of the policy deductible was based, not on any direct evidence of loss of sales, but rather on the assumption that a loss of earnings had to have resulted from its premises being flooded and its normal operations disrupted. While the jury apparently accepted this theory, this does not mean that Pacific was unreasonable in rejecting it and requiring more concrete proof of a loss. Considering all of the evidence in the light most favorable to Cabell, no reasonable jury could conclude that Pacific lacked an arguable reason to deny the claim. Because Pacific had an arguable reason to refuse to pay, it cannot be liable for punitive damages. *Veal,* 354 So.2d at 248.

Furthermore, the Mississippi Supreme Court has stated that the term "legitimate or arguable reason"

> is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.

*State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d 242, 250 (Miss.1985). Viewing all the evidence in the light most favorable to Cabell, it is the court's opinion that Pacific's conduct did not rise to the level of willfulness or gross negligence so as to constitute an independent tort, and thus did not create a jury issue on punitive damages.

■ The court further notes that the Mississippi Supreme Court has stated that the absence of a directed verdict for the plaintiff on the underlying claim is ordinarily dispositive of the question of punitive damages; in the vast majority of cases, unless the trial judge grants a directed verdict to the plaintiff on the underlying claim, then as a matter of law, the insurance carrier has shown a legitimate or arguable reason to deny the claim. *See, e.g., Aetna,* 487 So.2d at 833–34; *Blue Cross,* 466 So.2d at 843. Only in "extreme factual situations" will this "directed verdict" test be inapplicable. *See Aetna,* 487 So.2d at 834. It appears to the court that this case does not involve such a situation. A consideration of the Mississippi cases suggests that the directed verdict test would be inapplicable only where, under the circumstances, the insurance company's reasonableness in denying the claim does not logically follow from the court's determination that a jury could reasonably find for the insurer. Justice Robertson, in his concurrence in

*Blue Cross,* reasoned that if a reasonable jury could find that there was no liability under the policy, then *"the same evidence surely would justify a reasonable insurance company in so concluding." Blue Cross,* 466 So.2d at 851 (Robertson, J., concurring) (emphasis supplied). Only where the determination by the judge and that by the insurer were not founded on the "same evidence" would the directed verdict rationale be faulty. The cases in which the Mississippi Supreme Court has upheld a punitive damages instruction despite the absence of a directed verdict for the plaintiff on the underlying claim appear to involve, in one way or another, a different evidentiary basis for the insurer's decision from the basis for the court's decision. No factor is evident in this case which would make absence of bad faith a *non sequitur* from the absence of a directed verdict for the plaintiff.

Cabell seeks to establish the existence of an extreme factual situation by its contention that Pacific relied on a different defense at trial from that given as a reason for denial. Cabell cites the denial letter in which Pacific stated that the sales figures submitted by Cabell indicated that there had been no loss of earnings and contends that, at trial, Pacific's defense was that there had been no loss of earnings *in excess of the policy deductible.* This attempt to remove the case from the general rule appears to be without merit. Pacific had no liability under the policy unless the loss by Cabell exceeded the policy deductible. If Cabell sustained no earnings loss at all, then of course it sustained no loss of earnings in excess of the policy deductible. Pacific's expressing its opinion in the denial letter that there was no loss of earnings is basically not inconsistent with the position that Cabell had sustained a loss but that the loss was less than the policy deductible; in either case Pacific would have no liabili-

ty. Thus, even if Pacific had conceded at trial that there had been some loss of earnings, this would not amount to having asserted a different defense at trial from the one given as the reason for denial. Pacific's basis for denying liability was the same for trial as that expressed in the denial letter.[2] Therefore, the "directed verdict" test should be dispositive of the punitive damages issue.

## NEW TRIAL ON CONTRACTUAL LIABILITY

█ Pacific claims that giving a punitive damages instruction prejudiced the jury against Pacific on the underlying claim. Pacific requests that, if the court grants its motion for JNOV, the court also grant a new trial on the underlying contractual claim.

In *State Farm Fire and Casualty Co. v. Simpson,* 477 So.2d 242, 254 (Miss.1985), the Mississippi Supreme Court reversed an award of contractual damages where a punitive damages instruction was erroneously given. In that case, however, erroneously granted instructions on compensatory damages and punitive damages were held to be the equivalent of a peremptory instruction for the plaintiff on the issue of contractual damages. Here, by contrast, the court's charge on punitive damages was not peremptory with respect to liability on the underlying claim. The court further notes that Pacific did not request a bifurcated trial on the issues of contractual liability and punitive damages. Accordingly, the court concludes that Pacific's motion for a new trial on contractual liability should be denied.

## PREJUDGMENT INTEREST

Cabell moves the court to grant prejudgment interest on the amount of contractual damages awarded by the jury. Prejudgment interest may be awarded where puni-

---

**2.** Cabell also quotes from the denial letter Pacific's statement, "We further believe that the six day suspension was due to the unaccessibility to the premises caused by the flood, rather than the damage to or destruction of real and personal property." Cabell argues that, since Pacific now concedes that the flood caused damage to real and personal property, the quoted language is not a legitimate or arguable reason for refusal

to pay. Even if this statement were not a legitimate or arguable reason for denial, it was not the only, or even the primary, reason given. Since the court is of the opinion that Pacific's position that there was no loss of gross earnings was arguable, it is unnecessary to determine whether a jury could have found that the "unaccessibility" statement was not a legitimate or arguable reason.

tive damages are awarded or where the amount of contractual damages is liquidated.

■ Since the court has determined that Cabell was not entitled to punitive damages, this basis for prejudgment interest no longer exists. Cabell alternatively prays for prejudgment interest on a portion of the jury award. Cabell notes that on July 28, 1983, Fordham recommended that Pacific pay Cabell $32,358.35, an amount agreed upon by Cabell and Fordham. Cabell contends that this amount became liquidated as of that date. This argument is without merit because, while it is true that an amount is liquidated when it is agreed upon by the parties to a contract, Fordham had no authority to bind Pacific by any agreement he may have made with Cabell. Accordingly, the court is of the opinion that Cabell's motion for prejudgment interest should be denied.

### CONCLUSION

In light of the foregoing, it is hereby ordered that:

(1) Pacific's motion with reference to a judgment notwithstanding the verdict on the issue of punitive damages is granted, but denied with reference to a new trial on the issue of contractual liability.

(2) Cabell's motion for prejudgment interest is denied.